# EXHIBIT 14

**Supplement E - Gale Report Disputed Issues**

The Gale Exterior Building Envelope Review (the "Gale Report"), dated November 18, 2008, includes references to "incomplete and deficient items requiring attention" that are general in nature. Respondents contend that the following items identified in the Gale Report are not required by the Contract:

- .090 aluminum flashing at base floor slab architectural metal panel is not continuous. Detail 8/303.

- 12th floor architectural panels do not cover concrete slab-construction joint open to moisture infiltration.

- Verify that thermal insulation was installed in architectural metal panels at floor slab locations through out the building.

(Cl. Ex. 1, Tab 6, Gale Report, at p. 1.)

Pursuant to Paragraph 15 of the Agreement of Partial Settlement ("APS"), the parties have agreed to submit for determination in arbitration their disputes regarding whether the correction or performance of the foregoing general items of work is required under the Contract.

**Issue 1 – .090 Aluminum Flashing Is Not Continuous**

The dispute between the parties concerns the Contract requirement for the installation of .090 aluminum flashing installation over exterior windows at bumpouts. There is no dispute that the .090 aluminum flashing is required over the glass and aluminum windows. Madrigal contends that the .090 aluminum flashing must be continuous beyond the windows and on the sides (or around the corners) but cannot explain where the termination is to occur. Respondents maintain, on the other hand that the Contract drawing details do not depict .090 aluminum flashing to be installed beyond the windows or around the corners. Therefore, the Contractor has

1

installed the .090 aluminum flashing as shown in the Contract drawings, i.e., continuous over the glass and aluminum windows only.

Respondent's position is supported by the following evidence presented during the hearings.

- The section detail for the front window of a "bumput" is shown on Sheet 303, Detail 8 of the Metal Sales & Service approved metal panel shop drawings (Resp'ts Ex. 860) and Detail 12 on Contract Drawing A-530.

- The Contract Drawings only detail the continuous flashing/drip edge above the window at the "bumpout." During his testimony, Respondent's expert, Robert Lockhart, described this location as one that is similar to a bay window. (Lockhart, Day 11, R. at 2956:5 – 2956:14.)

- The Contract Drawings do not include a detail for the sides of the "bumpout." (Lockhart, Day 11, R. at 2961:4-2961:8.)

- Throughout the Contract Drawings, the details show a "drip" above the windows. Sometimes the drip is built into the precast and sometimes it is created out of flashing. (See Contract Drawing A-530, for examples.)

- There are no Contract details showing a flashing/drip edge between metal panels, including the sides of the "bumpouts." (Lockhart, Day 11, R. at 2960:9-2960:12 and 2961:4-2961:8.)

2

- A drip edge type detail is only applicable above window locations. (Lockhart, Day 11, R. at 2969:4-2969:7.)

- The Owner was alerted that there was no detail showing a termination of the flashing by the October 2, 2007 Gale Report, but chose not to revise the design to include additional drawing details. (Cl. Ex., C-1, Tab 6, Gale Field Observation Report.)

- The Owner's position is fatally flawed because Madrigal failed to provide any coherent evidence to establish that the Contract requires the installation of .090 aluminum flashing beyond the windows. Specifically, the Owner has not identified any Contract detail that establishes how and where the flashing is to terminate.

    - Mr. Sharabi described a system terminating with end dams where the "bumpout" meets the building face, but did not provide any citations to the Contract specifications or drawings. (Sharabi, Day 12, R. at 3380:16-3381:19.) Mr. Sharabi also could not describe how his system of vertical end dams would work since metal panels are flat against the flashing.

    - During the hearings, the Architect was led into claiming that Specification § 08911 was re-incorporated into the Contract in order to provide a vehicle for coordination of the flashing between the metal panels and windows. (Carter, Day 6, R. at 1535:12-1536:16.) Specification § 08911, however, does not include "flashing." In fact, paragraph 2.04.J of the Specification § 08911 indicates that the drainage system must not be visible to the

3

> exterior. The metal flashing drip edge at issue was visible as confirmed by Mr. Brungart. (Brungart, Day 12, R. at 3460:1-3461:4.)

- The drip edge detailed by Metal Sales & Service and in the Contract drawings is not long enough to span the gap at the side of the bumpout. (Lockhart, Day 11, R. at 2955:8-2957:11).[1]

This issue was addressed in a letter to Madrigal on May 29, 2009 with the Contractor's offer to walk the project to review the work. (Resp'ts Ex. 868.) Madrigal has not responded to the letter.

### 12th floor Architectural Panels Do Not Cover Roof Concrete Slab

The parties disagree regarding their responsibility for the existence of a two-inch gap between the bottom of the exterior metal panels at the roof level and the structure. Madrigal claims that Foulger-Pratt should have coordinated a solution to the design conflict between the Architectural and Structural Drawings regarding the configuration of the concrete structure. Foulger-Pratt maintains that it did, in fact, bring the conflict to the Architect's attention, and was instructed to build the metal panels, as shown on the Architectural Drawings. The Architect, in turn, was to direct the Structural Engineering Consultant to redesign the concrete structure to match Architectural Drawings. For whatever reason, the Structural Drawings were not revised to correct the design conflict.

Review of Contract Drawing Details 06/S-203 and 6/A-520 reveal the conflict between the Architectural and Structural Drawings. This design conflict resulted in caulk joints over 2" in width. As a result of the conflict, the 12th floor architectural panels also do not cover the

---

[1] This issue is also included in Respondent's Expert Report. (Resp'ts Ex. 1007 at page 13.)

concrete slab. Finally, the design conflict has caused problems with metal panel alignment. The Contractor has installed new panels to resolve most of these issues, but cannot be expected to re-design, nor are they allowed to re-design, the architectural features of the building. (Resp'ts 1007, page 14; Lockhart, Day 11, R. at 2972:15-2976:22.)

This issue was submitted to the Architect, who directed the Contractor and the Structural Engineer to follow the Architectural detail. (Carter, Day 6, R. at 1592:19-1593:7.) The Contractor had the bottom panel fabricated without a return at the bottom, in accordance with the Architectural drawings. The Structural Engineer never directed any change to the design of the structure to correspond with the directive by the Architect. (Lockhart, Day 11, R. at 3104:15-3105:12.)

The structural concrete work was constructed in accordance with the structural drawings. (Lockhart, Day 11 R. at 2933:22 – 2975:6.) The architectural metal panels were fabricated in accordance with the architectural drawings. (Lockhart, Day 11, R. at 2975:21 – 2976:11.) Note that the structural drawings show the parapet wall straight up from the slab edge while the architectural drawings show the wall recessed back from the slab edge location to allow the metal panel to be set in the resulting recess. This design conflict also results in the gap that is visible around the roof level (Gale Report page vi, bottom picture) at the same area addressed in RFI 121R. (Lockhart, Day 11, R. at 2972:15 – 2976:18.)

The Contractor proposed a resolution (RFI 121R) which was approved by the Architect (Resp'ts Ex. 721), but rejected by the Owner (Resp'ts Ex. 745). (Lockhart, Day 11, R. at 2976:18 – 2980:16; Resp'ts Ex. 721, 733, 745, 748, 752.) The Owner's insistence on removal of the concrete at the edge of this post-tensioned slab is contrary to the Contract and would create a

5

safety concern since the concrete being removed houses the anchors for the post-tensioned slab. This issue was presented to the Owner in detail on Apr. 24, 2009. (Resp'ts Ex. 748.) No response to this letter has been provided. The Owner's failure to address this issue, and prevention of the resolution by the Architect and Contractor, further delays resolution of the punch list work, effectively preventing payment to the Contractor.

Thermal Insulation In Architectural Metal Panels at Floor Slab

Claimant and Respondent dispute that the lack of insulation at the edges of floor slabs is a construction defect or is in accordance with the Contract Documents. The Nov. 18, 2008 Gale Report simply states, "Verify that thermal insulation was installed in architectural metal panels at floor slab locations throughout the building."

The details for the floor slab edge construction are generally indicated on drawings A-520 and A-530. Details 4, 5, 6, 7, 11, 12, 13, 16, 17, 18, 19 and 23 on A-520 all show architectural metal panels at floor slab locations. Of these 12 locations only detail 4 shows a "Batt Insulation" symbol behind the metal panel but references a larger scale detail on 4/A-530. This larger scale detail, entitled "Typical Head Detail at Metal Panel", shows that there is no batt insulation. As such, there is a conflict between the large scale and smaller scale drawings. (Resp'ts Ex. 1007, pp. 14-15; Lockhart, Day 11, R. at 2947:11-2949:7.)

During the submittal process Metal Sales and Service recommended on its drawings that insulation be added at numerous metal panel locations. (Resp'ts Ex. 860.) The drawings were approved, but no directive or change order was issued to add insulation at any metal panel locations. (Lockhart, Day 11, R. at 2957:18-2958:21.)

6

The Contract is clear, per contract clause 14.6.8(a), that the larger scale drawings shall take precedence over the smaller scale drawings. (Cl. Ex. 2, General Conditions § 14.6.8.) The larger scale drawings show that insulation is not required. Contract, ¶ 14.6.8(a) resolves this issue. There is no inconsistency and no Contract requirement to install thermal insulation. Accordingly, the Contractor has installed the metal panels in accordance with the Contract.