## DISTRICT OF COLUMBIA: ARBITRATION

In re Arbitration between:              )
                                        )
**MADRIGAL CONDOMINIUMS, LLC,**         )
                                        )
    Claimant,       )
                                        )
    v.              )      **PANEL:**
                                        )      Andrew D. Ness, Esq. (Chair)
**FOULGER-PRATT RESIDENTIAL**           )      Charles M. Asmar, Esq.
**CONTRACTING, LLC**                    )      Judith B. Ittig, Esq.
                                        )
    Respondent/Counter-Claimant, )
                                        )
    And             )
                                        )
**TRAVELERS CASUALTY & SURETY**         )
**CO. OF AMERICA**                      )
                                        )
    Respondent.

## INTERIM AWARD

The parties to this arbitration are Madrigal Condominiums, LLC ("Madrigal" or "Claimant"), and Foulger-Pratt Residential Contracting, LLC ("Foulger-Pratt") and Travelers Casualty & Surety Company of America ("Travelers") (together "Respondents"). Their dispute relates to completion of the Madrigal Lofts condominiums in Washington, D.C. (the "Project"), and the related rights and obligations of these parties under the following governing agreements:

    a.    GMP Construction Contract ("Agreement") between Madrigal and Glen Construction Company, Inc. ("Glen"), dated July 7, 2005 (Ex. C-2).

    b.    The Assignment Agreement among Glen, Travelers, and a Foulger-Pratt affiliate (thereafter assigned to Foulger-Pratt), dated December 10, 2007 (Ex. C-33);

    c.    The Agreement of Partial Settlement among Foulger-Pratt, Travelers and Madrigal, dated February 2, 2009 ("APS") (Ex. C-11); and

  d. The performance and payment bonds issued by Travelers in connection with the Project ("Bonds").

This Panel was appointed and confirmed in accordance with, and draws its jurisdiction from, Article 4.4.1 of the Agreement General Conditions, as subsequently modified by Paragraph 11 of the APS. No objection has been made to any aspect of the appointment of the Panel or the parties participating in the arbitration. The Panel's interpretation of these agreements is that its jurisdiction under the Agreement and the APS encompasses all disputes arising under either of these agreements, and the parties have confirmed that they all share this same understanding.

This arbitration is *ad hoc*, in that it is not governed by any agreed set of arbitration procedural rules. The Panel accordingly has conducted the arbitration within the ambit of generally accepted principles of due process in arbitration, as reflected in all arbitration rules with which the Panel is familiar, and the requirements of the Federal Arbitration Act. No issues have arisen in the course of the proceeding that would turn on differences between one set of procedural rules versus another.

Prior to the commencement of the hearings, several telephone conferences with counsel were held, beginning with an initial conference on March 27, 2009. These conferences resulted in a series of Orders by the Panel regarding a number of procedural, jurisdictional and discovery issues. These Orders are dated April 1 (Order Following Initial Conference), April 24 (Order Following Discovery Conference), April 29 (Second Order Following Discovery Conference), May 1 (Third Order Regarding Discovery) and May 26, 2009 (Order Regarding Hearing Scope and Project Neutral).

EXHIBIT 1

Pursuant to the first of these Orders, each side provided a Statement of Claims and a Statement of Defenses. Hearings were held on May 20, 26, and 27, June 1, and July 14, 15, 20, 21, 22, 23, 24, and 27, 2009, during which testimony and exhibits were received. Based on the claims presented for determination, and having considered all of the testimony and exhibits presented, the pre-hearing and post-hearing briefs submitted by the parties, and hearing oral arguments on September 21, 2009, and after due deliberation, the Panel makes this Interim Award. The parties have not requested, and the Panel does not provide, a "reasoned award." However, given the complexities of the issues presented and of our rulings herein, some explanation of our rulings has been provided for purposes of clarity.

Madrigal Claims:

1.      Count I: Count I seeks Liquidated Damages for Foulger-Pratt's alleged failure to achieve Substantial Completion by the Guaranteed Date of Substantial Completion, December 31, 2007. With respect to Count I the Panel awards the sum of $138,000. The Panel confirms that the date of Substantial Completion for purposes of commencement of all warranties is June 1, 2008.

2.      Count II: Count II seeks damages for Foulger-Pratt's alleged failure to provide a Contractor's Punch List for the exterior of the building. With respect to Count II the Panel awards the sum of $37,920. The claim for fees paid to Clayton Ewell is reserved for later determination as part of the Reserved Exterior Skin Claim, addressed below.

3.      Count III: Count III seeks damages for Foulger-Pratt's allegedly unjustified halt in performing punch-list work on the Project, as of approximately December 2008. The Count III claim is hereby denied.

3

4. Count IV: Count IV as originally stated seeks six different categories of damages (plus associated management fee in some instances), all relating to Foulger-Pratt's alleged failure to achieve Final Completion as required by the Agreement.

a. The first item, a claim in the amount of $1,064,000 for failure to perform the "Items 1-8 Punch-List Work," as identified and defined in Paragraph 5 of the APS, was withdrawn by Madrigal without prejudice and reserved, following a suggestion by the Panel. This issue is further addressed below.

b. The second item, a claim for additional inspections by Madrigal's design team, is hereby denied. Madrigal conceded that no such costs have been incurred, other than amounts claimed separately elsewhere (e.g., Count II).

c. The third item, a claim for estimated costs to complete an expected Condominium Association Punch List, is hereby denied.

d. The fourth item, a claim for estimated costs to complete expected Unit Owner Punch Lists for presently unsold units, is hereby denied.

e. The fifth item is a claim for extended Developer Fees. This claim is hereby denied.

f. The sixth item, a claim for Utility Reimbursement, is hereby denied. Madrigal concedes there was no evidence presented with respect to this claim item.

g. Given the foregoing rulings, Madrigal's claim for 20% management fee with respect to certain of these claim items is hereby denied.

5.      Count V: Count V was pled as a claim for damages for Foulger-Pratt's alleged failure to pay subcontractors and submit appropriate lien releases. Based on subsequent discussions over the course of the proceedings, however, the Panel understands Madrigal's actual claim to be that Madrigal is entitled to continue withholding the entirety of the unpaid Agreement balance for this reason (among other reasons argued by Madrigal), until all requirements for Final Payment are satisfied. That issue is addressed below. To the extent that Count V states a specific claim for a monetary amount, such claim is denied.

6.      Count VI: Count VI claims damages for Foulger-Pratt's alleged failure to submit close-out documents, as required by the Agreement as a precondition to Final Payment. As with Count V, with one exception (a payment to Kone elevator for $4,071), the Panel understands Madrigal's claim to be that Madrigal is entitled to continue withholding Final Payment for this reason (among other reasons argued by Madrigal), an issue dealt with below. With respect to Madrigal's claim for the Kone payment, that claim is hereby denied. To the extent that Count VI states any other claim for a specific monetary amount, such claim is denied.

7.      Count VII: Count VII claims damages for Foulger-Pratt's filing of a lien, allegedly in violation of the Agreement. To the extent that Count VII claims legal fees incurred, that claim is dealt with under Count X below. To the extent that Count VII claims any other amounts, including but not limited to the claim for "Owner's time," such claims are hereby denied.

8.      Count VIII: Count VIII seeks back rent allegedly owed by Foulger-Pratt for use of the Project field office. The Count VIII claim is hereby denied.

5

9.  Count IX: Count IX claims three categories of damages for Foulger-Pratt's alleged breach of its obligation to protect and repair the Second Baptist Church. The three items are: an estimate of costs to be incurred to repair the Church (which repairs have not been performed to date), fees of a structural engineer, and an amount for "Owner's time." (associated legal fees are separately claimed in Count X). In our Order of May 26, 2009, the Panel ruled that Foulger-Pratt's liability or potential liability for damages to the Second Baptist Church was ripe for determination, but noted that in advance of the repairs the actual damages could not yet be determined.

With respect to Count IX, the Panel rules as follows: Foulger-Pratt has no contractual obligation to undertake repairs to the Church. However, Foulger-Pratt (which assumed this Glen obligation per the Assignment Agreement) is liable to indemnify Madrigal pursuant to General Conditions Section 3.18 to the extent that Glen's or Foulger-Pratt's negligence or failure to take reasonable steps to protect the Church causes Madrigal to incur loss or expense covered by Section 3.18. We make no ruling as to the existence or non-existence of such negligence or failure to take reasonable steps, as no party presented competent evidence on these issues. Given the foregoing ruling, we view the parties' agreement in Paragraphs 6 & 7 of the APS to withhold a total of $250,000 pending specified events to be generally consistent with the Agreement, and see no basis for the Panel to change this arrangement at this time, except as specifically provided below with respect to the establishment of an Escrow Account. Madrigal's claim items in Count IX are accordingly reserved, other than the claim for "Owner's time," which is hereby denied.

10. Count X: Count X seeks attorney's fees and expenses for various alleged Foulger-Pratt breaches of contract and indemnification responsibilities. With respect to Count X, the Panel awards attorneys fees in respect of the Schnabel Foundation and J.P. Construction

EXHIBIT 1

liens ($18,322 claimed), the Kone lien ($2,610.50 claimed) and the failure to provide lien waivers in proper form ($9,184.50 claimed). All other attorneys fees claims are denied, except for the fees associated with the Second Baptist Church, which claim is reserved. While the amounts claimed for these items total $30,117, no specific monetary award is made at this time. This is because, as the Panel indicated during the hearing, counsel for Foulger-Pratt/Travelers is to be afforded an opportunity to review and note any objections to the specific entries and amounts being claimed prior to our award on this point. (July 20 Trans. at 38-41). Accordingly, Respondents shall, within 15 days of the date of this Interim Award, provide the Panel with any objections to the fee amounts claimed for these items. Claimant thereafter may respond to such objections within an additional 10 days, after which the Panel will issue an additional Interim Award regarding such fees.

11.     Summarizing the foregoing, the total awarded to Madrigal with respect to Madrigal's monetary damage claims is $175,920, plus the amount of attorneys fees that is yet to be determined, as previously noted.

Foulger-Pratt Counterclaims:

12.     Foulger-Pratt claims damages for extended direct supervision costs, due to Madrigal's alleged breach of the agreement by not permitting Final Completion to be achieved. With respect to this claim the Panel awards the sum of $256,121.

13.     Foulger-Pratt claims that Final Completion has been achieved and it is entitled to Final Payment, or alternatively that any outstanding prerequisites for Final Payment have been excused, waived or prevented by Madrigal's actions or inactions. Foulger-Pratt accordingly

7

claims entitlement to payment of the entire Agreement balance, plus pre-award interest. Specifically, Foulger-Pratt claims it is entitled to:

    a.    Interest at 6% on $50,210 (the amount of Pay Application #27, as adjusted per Paragraph 3 of the APS) from June 15, 2008 until the date Application No. 27 was paid by Madrigal on March 20, 2009;

    b.    $296,816 for Pay Application No 28, plus interest at 6% from June 15, 2008 until award;

    c.    $2,288,443 for Pay Application No. 29, plus interest at 6% from June 15, 2008 until award; and

    d.    $1,000 (the amount by which Pay Application No. 27 was reduced per Paragraph 3 of the APS), plus interest at 6% from June 15, 2008 until award.

14.    With respect to Foulger-Pratt's claim for Final Payment, the Panel rules as follows:

    a.    Madrigal has asserted a claim for incomplete and/or defective work on the Project's exterior skin that the parties have agreed (and the Panel concurred in its Order of May 26, 2009) was not yet ripe for determination (the "Reserved Exterior Skin Claim"). Madrigal presented the report of its expert on this claim to Foulger-Pratt on September 21, 2009. If there is no resolution of this issue by the parties, the issue has been reserved for a subsequent hearing to be scheduled before the Panel. Accordingly, nothing in this Interim Award is intended to affect Madrigal's ability to assert the Reserved Exterior Skin Claim.

    b.    Similarly, given the Panel's foregoing ruling with respect to damage to the Second Baptist Church, the procedure and specific payment holdbacks to address this

EXHIBIT 1

issue in Paragraphs 6 & 7 of the APS continue to apply. The total withholding agreed in the APS for this item is $250,000.

c. Foulger-Pratt has also agreed, per Paragraph 5 of the APS, to complete the Items 1-8 Punch-List Work; to have its completion of these Items (subject to one carve-out dealt with below); determined by the Project Neutral, and to the withholding of up to $1,194,000 pending such completion. Madrigal, however, has stipulated that Items 1-3 have been completed, leaving disputes regarding the Items 4-8 Punch-List Work for determination by the Project Neutral. The value assigned to Items 1-3 by the parties was $434,000. The withholding for Items 4-8 is therefore established at $763,000.

d. With respect to subcontractor/supplier warranties that Madrigal claims to be outstanding, incomplete and/or insufficient, the Panel concludes that only the deficiencies in warranties for periods in excess of one year (the "Special Warranties") identified on Attachment A hereto remain to be cured by Foulger-Pratt. A withholding of $100,000 is hereby established with respect to the foregoing Special Warranty deficiencies. Any disputes regarding the sufficiency of cure as to such Special Warranties or the release of this holdback amount upon such cure shall be submitted to the Panel for determination. We find that any other remaining deficiencies in any subcontractor/supplier warranties submitted are excused and Foulger-Pratt has no remaining obligation with respect to providing them. This ruling is not intended to affect Foulger-Pratt's obligation, per Agreement Section 2.3.16, to provide the warranties required by DC Code Title 42, Chapter 19, or other remaining Foulger-Pratt warranties under the Agreement, if any.

e. With respect to subcontractor and supplier lien releases that Madrigal claims to be outstanding, incomplete or insufficient, the Panel concludes that to the extent of any

remaining deficiencies in such lien releases, Foulger-Pratt is excused from any further obligation to provide such lien releases. Additionally, we note that Foulger-Pratt (per the Assignment Agreement) and Travelers (per the Bonds) remain bound by Section 14.6 of the Agreement to promptly bond off any subcontractor or supplier liens that may be asserted. This requirement, in combination with the Escrow Account arrangement provided for herein, amply protects Madrigal from any residual risk of liens.

f.  With respect to all other items alleged by Madrigal to be incomplete or deficient and to preclude Final Completion and/or Final Payment (including other close-out documents, certified Cost of the Work, future Unit Owner Punchlists, Condo Association Punchlist(s) and any other contractor deliverables alleged by Madrigal), the Panel concludes that all such requirements have either been satisfied or excused, and Foulger-Pratt has no further obligation to provide any such items.

g.  Subject to the foregoing holdbacks and open items (which are addressed in more detail below), the Panel awards Foulger-Pratt the sum of $2,586,259 with respect to its claim for Final Payment, plus pre-award interest as follows:

1. $2,294.53 in interest with respect to Payment Application No. 27;

2. $26,005.96 in interest with respect to Payment Application No. 28; and

3. $143,011.78 in interest with respect to Payment Application No. 29.

15. The parties are directed to establish an interest-bearing escrow account at a mutually agreeable bank or other financial institution (the "Escrow Account"). The terms of the Escrow Account shall be as follows: a) amounts shall be payable from the Escrow Account only upon written agreement of Madrigal and Foulger-Pratt or written Order of the Panel; and b) accrued interest will follow principal in all instances. Should the parties be unable to mutually

DC:50644766.3

agree upon the terms of an escrow agreement and/or the identity of the financial institution within 30 days following the date of this Interim Award, each side shall submit its proposed escrow agreement and /or recommended financial institution to the Panel, and the Panel will make the determination.

16.  The total awarded to Foulger-Pratt herein is $3,013,692. Less the $175,920 awarded to Madrigal herein, the net amount awarded to Foulger-Pratt is $2,837,772 (subject to subsequent adjustment for the attorneys fees herein awarded to Madrigal). Given the outstanding issues as noted above, the Panel directs payment of this net Interim Award to be made as follows:

a.  $763,000 shall be paid to the Escrow Account, for payment to Foulger-Pratt, with accrued interest, upon determination by the Project Neutral that the Items 4-8 Punch-List Work have been completed, as provided in Paragraph 5.3 of the APS;

b.  $250,000 shall be paid to the Escrow Account, for payment to Foulger-Pratt, with accrued interest, as provided in Paragraphs 6 & 7 of the APS;

c.  $100,000 shall be paid to the Escrow Account, for payment to Foulger-Pratt, with accrued interest, upon correction of the noted deficiencies and delivery to Madrigal of the Special Warranties listed in Attachment A;

D  $30,117 shall be retained by Madrigal pending the Panel's issuance of a subsequent interim award regarding attorneys fees, as provided in Paragraph 10 above; and

e.  The balance of the net Award, $1,694,655, shall be paid to Foulger-Pratt within 15 business days of this Interim Award.

17.     Among the Items 1-8 Punch List Work, Paragraph 15 of the APS provides that the Panel is to determine Foulger-Pratt's obligation to perform Gale report items that Foulger-Pratt contends are not required by the Contract Documents. This is a specific carve-out agreed by the parties to what would otherwise be the Project Neutral's responsibilities. There are three such issues that were identified by Foulger-Pratt: a) whether Foulger-Pratt is responsible for extending beyond the windows the .090 aluminum flashing over certain exterior windows, or providing an end-dam therefore; b) whether Foulger-Pratt is responsible for correcting the gap between the bottom of the exterior metal panels at the roof level and the building structure at the 12th floor; and c) whether Foulger-Pratt needs to install thermal insulation between the panel and edge of the concrete floor slab at each floor. Madrigal has requested that the Panel defer ruling on these issues, but the Panel rejects this request, noting that all parties have been heard on these issues (indeed, considerable hearing time was expended on these issues), and APS Paragraph 15 also contemplates a ruling on these issues in advance of the Project Neutral's involvement. The Panel concludes that Foulger-Pratt has no contractual responsibility to perform the three identified items from the Gale report. Additionally, the Panel finds that Specifications Section 08911(Glazed Aluminum Curtain Wall) is not applicable to the exterior metal panels.

18.     The Panel confirms the agreement of the parties, as set forth in Paragraph 10 of the APS, to delete the Second Year Warranty Work from the Agreement on the terms therein set forth. This confirmation is provided in lieu of a Change Order to this effect and is intended to eliminate the need for the Change Order called for by Paragraph 10 of the APS.

19.     The objection raised by Respondents to the consideration by the Panel of certain new exhibits submitted by Madrigal with its letter of September 25, 2009 is denied as moot. Those exhibits played no role in this Interim Award.

EXHIBIT 1

20.     This is an Interim Award that does not determine all issues before the Panel, and is expressly not intended to be a Final Award. The Panel accordingly retains jurisdiction to determine the remaining issues noted above, as well as any other issues that may require resolution under the Agreement, the APS, this Interim Award, or relating to the Escrow Account.

This Interim Award is entered this 30th day of November, 2009.

_____
Andrew D. Ness, Esq. - Chair


_____
Judith B. Ittig, Esq.


_____
Charles M. Asmar, Esq.

20.     This is an Interim Award that does not determine all issues before the Panel, and is expressly not intended to be a Final Award. The Panel accordingly retains jurisdiction to determine the remaining issues noted above, as well as any other issues that may require resolution under the Agreement, the APS, this Interim Award, or relating to the Escrow Account.

This Interim Award is entered this 30th day of November, 2009.

_____
Andrew D. Ness, Esq. - Chair

*[signature: Judith Ittig]*

Judith B. Ittig, Esq.

_____
Charles M. Asmar, Esq.

20. This is an Interim Award that does not determine all issues before the Panel, and is expressly not intended to be a Final Award. The Panel accordingly retains jurisdiction to determine the remaining issues noted above, as well as any other issues that may require resolution under the Agreement, the APS, this Interim Award, or relating to the Escrow Account.

This Interim Award is entered this 30th day of November, 2009.

_____
Andrew D. Ness, Esq. - Chair

_____
Judith B. Ittig, Esq.

*[signature]*

Charles M. Asmar, Esq.

## INTERIM AWARD

## ATTACHMENT A

### Part 1: Multi-Year Special Warranty Deficiencies

Based on the Panel's review of Attachment B to Madrigal's Post-Hearing Brief (Warranty Information), review of the "Reconciled GMP Set" Specifications as found in Exhibits R-5 and R-6, and review of Exhibits C-13, R-700, 1022, 1023, 1035 as identified by Foulger-Pratt's Post-Hearing Brief (at 106), the Panel has identified the following deficiencies in required special warranties as supplied by Foulger-Pratt ("Tab" column references tabs in Madrigal Attachment B, or exhibit reference):

| Tab | Warranty | Warranty Period | Specification Ref. | Deficiencies |
|---|---|---|---|---|
| | **DIVISION 7** | | | |
| D | Barrett Roofs | 15 Years | 07561 Hot Fluid-Applied Roofing, Par. 1.8 A. | Warranty needs to be signed. |
| H | Sto Corp. | 10 Years | 07241 -Exterior Insulation & Finish Systems-Class PB | Warranty needs to be signed. Needs to state the correct Substantial Completion date of June 1, 2008. (Date wrong by 6 months). |
| L, M | Big "T" Caulking & Services LLC | 2 Years | 07920 -Joint Sealants | Warranty needs to be signed. |
| | **DIVISION 8** | | | |
| C | Jeld-Wen Warranty | 5 Years | 08211 -Flush Wood Doors | Warranty needs: (1) Owner/Project Name and address. (2) Signature. (3) Correct Substantial Completion date of June 1, 2008. |
| I R 1035 at 6 | Oldcastle Glass Engineered Products | 5 Years | 08520 -Aluminum Windows | Warranty needs correct Substantial Completion date of June 1, 2008. |
| K R 1035 at 22 | Sunview Patio Doors Limited | Various -- 2 Years To 25 Years | 08550-Aluminum Sliding Glass Doors | Warranty needs: (1) Owner/Project Name and address. (2) Correct Substantial Completion date of June 1, 2008. |
| M | H&B Glass Contracting | 2 Years | 08800 (§ 1.9) Glass and Glazing | Warranty needs: (1) Owner/Project Name and address. (3) Correct Substantial Completion date of June 1, 2008. |
| | **DIVISION 9** | | | |
| B | Schluter-System L.P. | 5 Years | 09310 -Ceramic Tile | Warranty needs: (1) Owner/Project Name and address. (2) Correct Substantial Completion date of June 1, 2008. |

Page 1 of 2

EXHIBIT 1

| | | | | |
|---|---|---|---|---|
| H, I | Shaw Contract Group | 10 Years | 09680 (§ 1.7 A, B) - Carpet | Two carpeting products are sufficiently identified for warranty purposes in Tab I, but need to clarify if this includes all Shaw carpeting products supplied (i.e., Tab H warranty is blank and unsigned). |
| J | Constantine | 10 Years | 09680 (§ 1.7 A, B) - Carpet | Warranty needs: (1) Owner/Project Name and address. (2) Correct Substantial Completion date of June 1, 2008. (3) Signature. |
| | **DIVISION 15** | | | |
| A | Woodlawn | 4 years parts only on unit mounted control board, compressor, refrigerant heat exchangers and reversing valve. | 15741 – Water Source Heat Pumps, Par. 1.3 J. | Special Warranty covers only compressor, and not other required items. |
| B | Woodlawn | 25 years on gas heat exchanger only. | 15775 – Packaged Rooftop Units, Par. 2.5 A. | Special warranty is only for five years. |
| O | State Water Heaters | 5 Years | 15410-Potable Water Heaters, Par. 2.1 H. | Warranty needs: (1) Owner/Project Name and address. (2) Signature. |

## Part 2: Special Warranties Not Found

In addition, the Panel identified certain special warranties required by the Specifications that Madrigal alleged were never provided, and which the Panel was also not able to locate within the exhibits. These also need to be provided.

| Tab | Warranty | Specification Reference |
|---|---|---|
| | **DIVISION 8** | |
| D | 08212 - Stile and Rail Wood Doors | § 08212, ¶1.7 A of the Specifications - 5 yrs exterior, life interior, 5 yrs glass panels |
| J | 08535 - Aluminum Swing Terrace Doors | § 08535, ¶1.10 A of the Specifications - 5 yrs manufacturer warranty (installation warranty only was located) |
| O | 08814 - Mirrored Glass | § 08814, ¶1.9 of the Specifications. – 5 yrs. |
| U | 08960 - Sloped Glazing Systems | § 08960, ¶1.7 A, B of the Specifications - 10 yrs. |
| | **DIVISION 9** | |
| M | 09963 – Elastomeric Coatings | § 09963, ¶1.9 A, B of the Specifications. - 10 yrs. |
| | **DIVISION 15** | |
| N | 15380 - Mechanical Dryer Venting System | § 15380-4, ¶3.4 A of the Specifications. - 24 mos from install; 30 mos from shipment, whichever is earlier. |
| S | 15620 - Boiler and Accessories | § 15620, ¶2.1 G of the Specifications - Pressure vessel 10 yrs; 3 yrs flue gas corrosion. |