EXHIBIT 8

**MADRIGAL CONDOMINIUMS, LLC**
at Mount Vernon Place
811 – 4th Street. N.W.
Washington, D.C.

# <u>MODIFIED</u> STANDARD FORM OF

# AGREEMENT BETWEEN

# OWNER

# and

# CONTRACTOR

MC000016216

# EXHIBIT 8

**MADRIGAL CONDOMINIUMS, LLC**
at Mount Vernon Place
811 – 4th Street, N. W.
Washington, D.C.

## TABLE OF CONTENTS

<u>Modified</u> Standard Form of Agreement Between Owner and Contractor

## E X H I B I T S

| | |
|---|---|
| A. | The Drawings, Specifications and all Addenda, Qualifications and Assumptions |
| A-1. | The Final Drawings, Specifications and Addenda |
| B. | <u>Modified</u> General Conditions of the Contract for Construction – AIA Document A201/1997 Edition – As Modified |
| C. | Underpinning Agreements |
| D. | Guaranteed Maximum Price and Trade Payment Breakdowns |
| E. | General Conditions Breakdown |
| F. | The Contractor's Application for the Payment and Cost Certification |
| G. | Contractor's Personnel |
| H. | The Project Progress Schedule |
| H-1. | The Dollar and Manpowered Loaded Version of the Project Progress Schedule |
| I. | The Store Material Information Form |
| J. | Soil Boring Data – Geotechnical Engineering Report for Residential Building |
| K. | Partial and Final Release Lien and Waiver of Claim Forms from the Contractor and Subcontractors |
| L. | Phase I Environmental Assessment |
| M. | Site Plan |
| N. | Intentionally Omitted |
| O. | Development Team Members List |
| P. | Alternates |
| Q. | Unit Prices |
| R. | Project Lender |
| S. | Contractor's Agreement with Project Lender |
| T. | Completion Certificate |
| U. | Equipment Value/Rental Rate Schedule and Equipment Log |

EXHIBIT 8

## MODIFIED STANDARD FORM OF AGREEMENT BETWEEN OWNER AND CONTRACTOR where the basis for payment is the COST OF THE WORK PLUS A FEE with a negotiated GUARANTEED MAXIMUM PRICE

### AIA Document A111 - 1997
### 1997 Edition - Electronic Format – As Modified

**THIS DOCUMENT IS A MODIFIED VERSION OF THE AMERICAN INSTITUTE OF ARCHITECTS A111 – 1997 EDITION FORM OF AGREEMENT. BY CONSENT OF THE PARTIES TO THIS AGREEMENT, THIS DOCUMENT DOES NOT IDENTIFY MODIFICATIONS THAT HAVE BEEN MADE TO THE A111 FORM.**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. This document is not intended for use in competitive bidding.

AIA Document A201 -1997, General Conditions of the Contract for Construction, as Modified, is adopted in this document by reference.

The unmodified version of this document is Copyright 1997 by The American Institute of Architects.

**THIS AGREEMENT** is made as of the 14 day of July , 2005, **BY AND BETWEEN:**

The Owner:  Madrigal Condominiums, LLC
c/o QDC Development Services of Washington L.L.C.
1001 G Street, N.W., Suite 700W
Washington, D.C. 20001

The Contractor:  Glen Construction Company, Inc.
9055 Comprint Court, Suite 100
Gaithersburg, Maryland 20877

The Project is:  Madrigal Lofts
811 – 4th Street, N.W.
Washington, DC 20001

The Architect is:  Davis, Carter, Scott, Ltd.
1676 International Drive
Suite 500
McLean, Virginia 22102

# EXHIBIT 8

The Design Team is:  A complete list of Design Team Members is provided in Exhibit O to the Agreement

The Project Lender is:  Described in Exhibit R

Owner and Contractor agree as follows:

## ARTICLE 1  THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, the Conditions of the Contract (General, Modified, Supplementary and other Conditions), the Drawings, the Specifications, Phase I Environmental Assessment (Exhibit L), Addenda issued prior to execution of the Agreement, other documents listed in the Agreement and Modifications issued after execution of the Agreement.  All of the foregoing documents form the Contract, and each is fully a part of the Contract as if attached to the Agreement or contained herein.  The Contract represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.  An enumeration of the Contract Documents, other than Modifications, appears in Article 15.  Any provisions herein to the contrary notwithstanding, all Construction Documents shall be construed consistently to the extent possible; in the event that the foregoing is insufficient to resolve any inconsistency in the Construction Documents, the inconsistency shall be resolved by construing the Construction Documents to require the greater quantity, higher quality, or sooner completion of the Work or the relevant portion thereof.

## ARTICLE 2  THE WORK OF THIS CONTRACT

2.1     The "Project" is a new 259-unit residential Condominium building at 811 – 4th Street, N.W., Washington, D.C. including: demolition of the existing parking lot and the pre-existing building foundations and all contents contained in them, all in accordance with all federal, District of Columbia, and local laws, statutes, ordinances, codes, rules and/or regulations, safety standards, orders of public authorities, permits (and conditions to permits), licenses, directives, and any other obligation imposed by law ("Laws"); preservation and protection (including performing Owner's obligations in any underpinning and/or easement agreements, including those which are or become Exhibit C) during construction of the existing underground utilities in and about the Project Site and the buildings and improvements which are adjacent to or in proximity of the Project Site, which "adjacent Properties" include 309, 311, 313, 315, and 317 H Street, N.W., and the Second Baptist Church (Contractor shall perform a pre-construction survey of 309 H Street, N.W. and Second Baptist Church as provided in Article 2.3.17 ); necessary excavation, fill, backfill, and compaction as required; compliance with any tower crane agreements and all laws and regulations pertaining to the use of a tower crane; construction of foundations, foundation walls and necessary support of foundation walls

2

MC000016219

# EXHIBIT 8

as required to support the building; construction of parking areas and infrastructure; construction of the Project, including coordination with all Owner -specified systems (audio-visual, telephone, telecommunications, cable security, etc.); all of the foregoing in accordance with the Contract Documents, including, but not limited to, the Drawings and Specifications (Exhibits A and A-1). The "Work" includes the construction and completion of the Project and the performance by Contractor of all of its undertakings and obligations under the Contract Documents. The Work also includes: pre- and post-construction services, administration of the Subcontracts, and all administrative, secretarial, or support work necessary for Contractor to comply with the requirements of the Agreement.

**2.2** Contractor agrees to and shall undertake, manage, perform and complete the Work to construct the Project in strict compliance with the Contract Documents, including, but not limited to, the drawings and specifications (the "Drawings and Specifications") set forth in Exhibit A and in Exhibit A-1. The parties agree that Exhibit A hereto, dated _____, references Drawings and Specifications and Addenda which are eighty-five percent (85%) complete, and that when the Drawings and Specifications and Addenda have been finalized with Contractor's comments, the finalized documents will be designated as Exhibit A-1. Contractor acknowledges that the Work of this Agreement includes those elements of the Work on the final Drawings and Specifications to be issued and identified as Exhibit A-1, and that the cost of said Work is included within the Guaranteed Maximum Price ("GMP") of this Agreement. The Guaranteed Maximum Price shall not be increased as a result of the finalization of the Drawings and Specifications as identified as Exhibit A-1.

**2.3** The Work, as defined in this Article 2, to be performed by Contractor to construct the Project also shall include but not be limited to:

> 2.3.1 Consultation with the Development Manager (defined below) and the Architect (and the Design Team Members) with respect to the Work and the development of detailed drawings, specifications, budgets, and schedules, including furnishing the Development Manager and the Architect with information as to the cost and availability of materials and methods of construction. During the entire design and construction process, Contractor shall perform value-engineering studies, cost estimates or other procedures as required or as requested by the Development Manager to ensure that the Project is completed within the Guaranteed Maximum Price as provided in Article 5. Contractor shall perform Contractor and Subcontractor coordination of the Work and, prior to the commencement of the Work, Contractor shall provide the Development Manager with a set of Drawings, Specifications and other necessary documentation which demonstrates that all of the Work will be performed in a coordinated manner.

> 2.3.2 Providing its best efforts and services to assist in the completion and pricing of the Construction Documents so that the total cost of constructing the Project (including Contractor's Fee and General Conditions) does not exceed the Guaranteed Maximum Price, including, but not limited to, providing the

3

MC000016220

# EXHIBIT 8

Architect, the Design Team, and the Development Manager with design reviews, guidance, suggestions on designs and changes to designs, proposals for design modifications, constructability analyses, pricing alternatives, and value engineering.

2.3.3  Supervising, coordinating, managing and performing the Work, including subcontracted work, and the performance of all other acts and services necessary for construction and completion of the Project in strict compliance with the requirements of the Contract Documents, including but not limited to the Drawings and Specifications.

2.3.4 Contractor shall provide all necessary personnel needed to meet its obligations under the Contract Documents, and such personnel shall be qualified to perform in a first-class manner, shall be Contractor's "best team," and shall be knowledgeable in all applicable industry standards and practices and laws. Contractor's designated personnel are listed on Exhibit G, and shall not be changed without the written consent of the Development Manager.

2.3.5  Contractor shall provide Constructability Reviews (i.e., contractor reviews) of each issuance of the drawings and specifications to determine whether there are sufficient details for Contractor to construct and perform the work (e.g. the Contractor  will verify that the space between the underside of structure and finished ceiling is properly coordinated and can accommodate all of the specified building systems including lights, ductwork, sprinklers, etc.).  Contractor shall regularly perform such Constructability Reviews during the performance of the Work until it is fully and finally complete.

2.3.6  Furnishing, directly or through Subcontractors, all labor, materials, equipment, and tools.  In the Contract Documents, the term "Subcontractors" shall include all subcontractors, material men, middlemen, brokers, sales representatives, laborers, suppliers of labor, any service or materials suppliers and suppliers of equipment and tools to accomplish the Work, and any engineers, surveyors or other professionals hired by Subcontractors to prepare shop drawings or for any other reason.

2.3.7  Procuring and expediting services under Paragraph 2.3.3 in connection with the Work.

2.3.8  Checking of Drawings and Specifications, preparing (or causing to be prepared) and checking estimates, bills, and shop drawings, and coordinating and obtaining all necessary approvals of shop drawings.

2.3.9  Making, entering into and enforcing of agreements with Subcontractors ("Subcontracts") and the scheduling and coordination of the performance of said Subcontracts.

2.3.10  Preparing of monthly and other required schedules, costs budgets and reports.  Within ninety (90) days after execution of this Agreement, Contractor

MC000016221

# EXHIBIT 8

shall provide the Development Manager with a Project Progress Schedule for the Work, which shall become Exhibit H hereto. Also within ninety (90) days after execution of this Agreement, Contractor shall provide the Development Manager with a dollar- and manpower-loaded version of the Project Progress Schedule for the Work, which shall become Exhibit H-1 hereto. Thereafter, Contractor shall provide monthly schedule updates, showing in comparison to the original Project Progress Schedule, the current progress of all aspects of the Work. At the election of the Development Manager, such monthly schedule updates shall include an updated dollar and manpower loaded schedule.

2.3.11 Obtaining necessary licenses and permits (except the Building Permit) for the Work and the Project.

2.3.12 Keeping of accounts and cost records. Contractor shall provide the Development Manager with a Cost Report Summary promptly after commencement of the work and monthly updates thereto.

2.3.13 Preparing bid packages for Subcontractors. Subcontracts shall be competitively bid, using a minimum of three (3) bidders acceptable to the Development Manager. The Development Manager shall be entitled to be present when bids are opened. Contractor shall provide the Development Manager with a detailed report of the bids, which compares the several bids for each element of the Work with the Budget. The report shall indicate the expected "buy" amount for each bid item. The report shall be updated and provided to the Development Manger as requested, but at least monthly. Contractor shall provide a copy of each Subcontract to the Development Manager, together with all subsequent amendments, modifications and changes thereto. Contractor also shall provide the Development Manager with all information concerning credits to Subcontractors or other financial adjustments or arrangements with Subcontractors which are not expressly set forth in the written Subcontracts.

2.3.14 Identifying all areas of the Contract Documents requiring further clarification and detailing during the pre-construction period and verifying that the clarifications and details have been properly implemented before proceeding.

2.3.15 Preparing and performing all punch-list Work, including Contractor's Punch List, the Owner's Punch List, the Condominium Unit Owners' Punch Lists and the Condominium Association's Punch List, all as defined and as required under Article 4.

2.3.16 Performing all warranty work, including warranty work for the Common Elements, Limited Common Elements, individual Condominium Owner's units, as well as any implied warranty work, all as defined in the DC Condominium Law, DC Code Title 42, Real Property, Chapter 19, and as required under the Contract Documents.

MC000016222

# EXHIBIT 8

2.3.17 Performin g a pre-construction written and photographic survey (interior and exterior) of the existing condition of the Adjacent Properties. Owner shall assist Contractor in obtaining permission to enter on and in the Adjacent Properties. Should permission not be granted for interior access, Contractor shall nonetheless perform a survey of the exterior of the Adjacent Properties. The purpose of the existing conditions survey is for use in determining whether the construction of the Project and/or the performance of the Work by Contractor is the cause of any damage to the adjacent structures (including new damage or exacerbation of existing defects). Contractor shall provide a copy of the survey(s) to Owner and Architect before commencing the Work. During construction, Contractor shall perform such additional surveys as are necessary to respond to complaints regarding the Adjacent Properties or as necessary to protect Contractor, Owner, Architect and Lender from liability. Contractor acknowledges that it is aware that the Adjacent Properties are old, are susceptible to damage, and will need to be protected from harm during the construction of the Project.

**2.4** Supplying all labor, materials and services necessary for the proper and complete performance of the Work, including all items that are consistent with and reasonably inferred by or in the Drawings and Specifications and all Addenda and other Contract Documents, without any increase in the Contract Sum specified in Article 5.

**2.5** The term "reasonably inferred" takes into consideration the understanding of the parties hereto that not every detail will be shown on the Drawings or included in the Specifications. Contractor shall not be entitled to increase the Contract Sum due to the absence in the Drawings and/or Specifications of any detail or specification the Contract Documents may require, or for any construction which may be found necessary as the Work progresses in order, to complete the construction of the Project, unless the said item or specification could not have been reasonably inferred from the Contract Documents. If an item or system is either shown or specified, all material and equipment required for the proper installation of such item or system and needed to make a complete, operating first- class installation consistent with the highest quality for residential Condominium buildings in Washington DC shall be provided whether or not detailed or specified, omitting only such parts as are specifically excepted in writing by the Development Manager. For example, if an item or system is shown architecturally in a general manner, the Work shall automatically include Contractor supplying and installing a complete item or system, with all civil, structural, mechanical, electrical and plumbing (MEP) aspects and details of such item or system, whether or not such aspects or details are shown on the civil structural or MEP drawings or specifications. In addition, if a system or item is shown on the civil, structural or MEP drawings and specifications, then the associated and necessary architectural features shall be provided.

**2.6** Owner intends to perform certain work with contractors other than Contractor. Contractor shall cooperate fully and coordinate with such contractors, including providing them with temporary power, water, toilets, loading, elevators, use of crane and access to the Project with no cost or time impact to the Project.

MC000016223

# EXHIBIT 8

**2.7** Contractor shall not perform any Work, other than General Conditions Work, except as approved in advance by the Development Manager. Any such work performed by Contractor shall be at a specific maximum price.

**2.8** Contractor shall be responsible for obtaining and expediting any permits required by federal, state and/or local law for the construction of the Project and the performance of the Work (excluding the Building and Sheeting and Shoring Permits). All trade permits shall be secured and paid for by Contractor or its Subcontractors. Contractor shall obtain any permits, licenses and permission for the use of a tower crane, and shall comply with all Laws and agreements relating to the tower crane and its use. Contractor shall obtain and pay the cost of the Certificates of Occupancy for all improvements on the Project, including, if required pursuant to Article 4.11, Temporary or Partial Certificates of Occupancy. Contractor shall be responsible to coordinate and contract with, but shall not be responsible for the payment of permanent utility charges (i.e., electricity, gas, telephone, or cable) requisite for the performance of the Work. Contractor shall arrange for all necessary utilities to be brought to the Project, the cost of which shall be a Cost of the Work. Contractor agrees to make no claim for an increase in the Contract Sum or time or for damages resulting from a delay in the performance of the Work occasioned by any act or omission to act of any utility company inspectors or government authority or any of its (or their) representatives.

**2.9** Contractor shall assume responsibility for the entire Work and shall provide and maintain all protection required by the applicable provisions of applicable laws, including, but not limited to building codes, requirements of the District of Columbia laws and agencies, conditions to the building permit(s), and any and all other applicable federal, state or local laws, statutes, ordinances, rules, regulations and directives or orders from government agencies ("Law"). Contractor shall remove any temporary protection upon completion of the Work or as directed. Contractor shall provide and maintain suitable temporary sidewalks, closed passageways, fences or other structures as required by Law in such a way as to leave unobstructed traffic at street level, access to adjacent structures and/or parking structures at or near the Project Site , access to the Project Site, access to hydrants, and to satisfy any other requirements imposed by Law. Contractor shall provide and maintain all lights and security as required by Law and/or needed to maintain safety and security for personnel and property. All fences, sign posts, light posts, etc., shall be painted and maintained in an attractive manner and shall be subject to the approval of the Development Manager. Contractor shall submit drawings of sidewalk passageways to the extent required by Law. Contractor shall oversee, maintain and protect all utility accouterments (e.g., preventing water pipe ruptures due to freeze/thaw conditions and sporadic usage). In performing the Work, Contractor shall coordinate and take all appropriate action, with respect to the disruption of utilities and other such services to all existing building(s) so as to minimize or avoid, if possible, damage or interference with the normal use of the building(s) and/or occupant(s) and business invitee(s) of Adjacent Properties. Contractor shall organize, provide and coordinate temporary construction signage which shall be submitted to the Development Manager for approval. Subcontractor signage shall not be permitted.

MC000016224

# EXHIBIT 8

**2.10** The Work includes the demolition of the existing building foundations and parking lot; and the preservation, protection and/or relocation or removal of underground utilities, whether or not such utilities are shown on the Drawings. All utilities that are relocated or removed shall be properly disposed of and all utilities that are to be abandoned in place shall be properly severed, capped, and covered. The determination whether to remove or abandon in place any utilities shall be made by the Development Manager in consultation with the Architect, and based upon the best interests of effectuating the design and construction of the Project. No abandoned utilities may be left or interred so as to adversely affect drainage, irrigation, or the installation of new utilities or structures.

**2.11** Owner reserves the right to assign any and all contracts for the execution of work or the delivery and installation of materials, furniture, fixtures, equipment and/or appliances, including but not limited to, telephone equipment, computer equipment, security equipment, cabling, and other Owner- supplied items ("FF&E") to Contractor, in which case such contracts shall become a part of the Work. In the event of an assignment of such FF&E contracts to Contractor, Contractor shall not be entitled to an increase in the Contract Time, and the GMP shall not be increased by more than the actual amount of the FF&E contract(s) actually assigned to plus an agreed Fee for incorporating such additional work.

**2.12** In the event that Owner elects not to assign any or all FF&E contracts to Contractor pursuant to Article 2.11, Contractor shall fully cooperate and coordinate with vendors and contractors and/or subcontractors employed by Owner or the Development Manager with regard to the execution of work or the delivery and installation of FF&E. Contractor shall coordinate with the Development Manager and/or Owner's agent(s) with respect to the scheduling, receiving, storing, distributing, installing and clean-up of FF&E items. In addition, Contractor shall provide storage, security and adequate access throughout the Project, including roads, elevators, loading docks and parking areas for FF&E items.

**2.13** Contractor shall comply with the rules and regulations promulgated by the Development Manager with regard to the use of the Project, including but not limited, to the use of and access, to the use of and elevators, loading docks, parking areas and buildings.

## ARTICLE 3  RELATIONSHIP OF THE PARTIES

**3.1** Contractor recognizes and accepts the relationship of trust and confidence established by this Agreement and covenants with Owner to cooperate with the Development Manager, the Architect and the Design Team and exercise Contractor's best skill and judgment in furthering the interests of Owner; to furnish efficient business administration and proper supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with Owner's interests. Owner agrees to provide, in a timely manner, responses to requests for information properly submitted and required by Contractor and

MC000016225

EXHIBIT 8

to make payments to Contractor in accordance with the requirements of the Contract Documents.

**3.2** The Development Manager, QDC Development Services of Washington L.L.C. c/o Quadrangle Development Corporation, is the representative of Owner for the Project and is authorized by Owner to take all actions and exercise all rights and entitlements on behalf of Owner. Contractor shall be entitled to rely upon the directives and decisions of the Development Manager. Contractor shall communicate solely with the Development Manager. Notwithstanding anything in the Contract Documents to the contrary, the Architect shall not be empowered to issue any directives or approve materials, colors, substitutions and deviations from the Contract Documents, unless related to emergency or safety matters, without the written concurrence of the Development Manager, Contractor shall bring all claims arising under and relating to this Contract against Owner, and not against the Development Manager, who is Owner's disclosed agent. The Development Manager's representative, who is authorized to act for the Development Manager, is Robert J. Knopf, Sr. V.P. Except for approval of the Work and stopping the performance of the Work, which actions may only be taken by Robert J. Knopf, Sr. V.P., for the Development Manager, other personnel, designated in writing by Robert J. Knopf, Sr. V.P., shall have the authority to make decisions and to act on behalf of the Development Manager.

## ARTICLE 4    DATES OF COMMENCEMENT, SUBSTANTIAL AND FINAL COMPLETION

**4.1** The "Date of Commencement" of the Work shall be the date stated in the Notice to Proceed issued by the Development Manager to Contractor.

**4.2** The Contract Time shall be measured from the Date of Commencement.

**4.3** The Work to be performed under the Contract Documents shall be commenced by Contractor on the Date of Commencement, and Contractor guarantees that the Work shall be Substantially Complete (as defined in Paragraph 4.5), on or before the 730th day after the Date of Commencement (the "Guaranteed Substantial Completion Date"), and Contractor guarantees that the Work, and Contractor's obligations under the Contract Documents, shall be Finally Complete (as defined in Paragraph 4.4) on or before the 90th day after the Guaranteed Substantial Completion Date (the "Guaranteed Final Completion Date"). Under certain limited circumstances, as provided in this Agreement, the Guaranteed Substantial Completion Date is subject to extension. Contractor hereby agrees and stipulates that time is of the essence to Owner under this Contract, including the Guaranteed Substantial Completion Date and the Guaranteed Final Completion Date, all critical path milestones and completion dates in the Project Progress Schedule (Exhibit H), all dates that become critical during the progress of the Work, and all dates and time periods stated in the Contract. In the event that the Substantial Completion Date does not occur on or before the Guaranteed Substantial Completion Date, Contractor shall pay to Owner, as fixed, agreed and liquidated damages, and not as a penalty, the sum of $1,000.00 per day for the first fifteen (15) days, $2,000.00 per day for the 16th day

MC000016226

# EXHIBIT 8

through the 30th day and $3,000.00 per day thereafter for each day in excess of the Guaranteed Substantial Completion Date to and including the certified Substantial Completion Date.

**4.4** Punch Lists:

    **4.4.1** Contractor's Punch List: Contractor shall commence preparing its internal punch lists of items needed to be completed/corrected in order to achieve Substantial Completion by the Guaranteed Substantial Completion Date for the several portions of the Project at least thirty (30) days prior to the Guaranteed Substantial Completion Date. Contractor shall provide copies of such "Contractor's Punch List" to the Development Manager and Architect for their review and comment.

    **4.4.2** Owner's Punch List: Upon Contractor completing the items in the Contractor's Punch List for a portion of the Work, Contractor shall notify the Architect so that the Architect can inspect that portion of the Work and prepare an "Owner's Punch List." Owner's Punch List is intended to consist of minor items, primarily of a cosmetic nature, it being agreed that all other Work shall be completed by the Guaranteed Substantial Completion Date. Owner's Punch List may include punch list items identified by the Architect, by engineers engaged by either the Architect or Owner, by Owner, by the Condominium Association and by individual Condominium Unit Owners. Contractor shall, using its best efforts, complete Owner's Punch List prior to the Guaranteed Final Completion Date. In the event that Contractor has not completed Contractor's Punch List before the Guaranteed Substantial Completion Date, so that the preparation of Owner's Punch List must be prepared thereafter, Contractor shall not claim that any item on a subsequently prepared Owner's Punch List has been caused by the use and occupancy of the Project and therefore is not its responsibility to repair or perform.

    **4.4.3** Condominium Association's Punch List: The Condominium Association's Punch List shall include items pertaining to the Common Elements and Limited Common Elements, as those term are defined by the Law of the District of Columbia. Contractor shall, using its best efforts, complete the Condominium Association's Punch List, should one exist at that time, prior to the Guaranteed Final Completion Date. In the event that Contractor has not completed the Condominium Association's Punch List before the Guaranteed Substantial Completion Date, Contractor shall not claim that any item on a subsequently prepared Condominium Association's Punch List has been caused by the use and occupancy of the Project and therefore is not its responsibility to repair or perform. Contractor shall, using its best efforts, complete any Condominium Association's Punch List prepared after the Guaranteed Substantial Completion Date as promptly as possible.

    **4.4.4** Condominium Unit Owner's Punch Lists: The term "Condominium Unit Owner" is defined by the Law of the District of Columbia. Each Condominium

MC000016227

# EXHIBIT 8

Unit Owner's Punch List shall include items pertaining only to the Condominium unit owned by such Condominium Unit Owner. Contractor shall, using its best efforts, complete all Condominium Unit Owner's Punch Lists, should any exist at that time, prior to the Guaranteed Final Completion Date. In the event that the Contractor has not completed all of the Condominium Unit Owner's Punch Lists existing before the Guaranteed Substantial Completion Date, Contractor shall not claim that any item on such Condominium Unit Owner's Punch Lists have been caused by the use and occupancy of the Project and therefore is not its responsibility to repair or perform. Contractor shall, using its best efforts, complete each and every Condominium Unit Owner's Punch List prepared after the Guaranteed Substantial Completion Date as promptly as possible.

4.4.5   Condominium Warranty Items: Contractor shall remedy any and all Condominium Warranty Items that Contractor and/or Owner is obligated by Law to remedy, and shall, using its best efforts, do so as promptly as possible. "Condominium Warranty Items" means any and all defects, structural or otherwise, which are subject to the warranties (express and implied) created and/or imposed by the Law of the District of Columbia applicable to this Condominium Project. Contractor's obligations with regard to Condominium Warranty Items are in addition to the warranty obligations of Contractor under the Contract Documents. The Condominium Association's Punch List and the Condominium Unit Owner's Punch Lists shall be deemed to include any Condominium Warranty Items which have been noticed by the Condominium Association and/or Condominium Unit Owners prior to the Guaranteed Date of Final Completion, and Contractor shall remedy such Condominium Warranty Items prior to, and as a condition of, Final Completion. Owner shall promptly give Contractor a copy of any such notice it receives from the Condominium Association and/or Condominium Unit Owners. Contractor shall, using its best efforts, promptly remedy any and all Condominium Warranty Items that are noticed after the Date of Final Completion which Owner or the Declarant (as defined by Law) is obligated to remedy under the Condominium Law of the District of Columbia.

**4.5** For purposes of this Agreement, "Substantial Completion" is, in addition to the other provisions and requirements in the Contract Documents, defined as that date when the Work has been fully and finally completed, with the only exception being any outstanding Owner's Punch List, or items thereon, in strict compliance with the Contract Documents, as approved by the Development Manager and Architect, and the state of completion is such that (1) Owner can fully and freely occupy or utilize the Project for the purpose intended without hardship, (i.e. that Owner can use all areas, all elevators, parking  spaces, roads, sidewalks, and exercise room; (2) all normal means of ingress and egress are clear of obstruction; (3) all fire life safety systems are complete and operable; (4) the exterior skin of the building is watertight and all site work has been substantially completed; (5) all elevators are in operation, have certificates of use, are in compliance with the requirements of the Drawings and Specifications, have operable telephones and are in compliance with Law; (Owner may hire an independent elevator inspector to determine compliance; however, this shall not relieve Contractor from any of

11

MC000016228

# EXHIBIT 8

its obligations); (6) all mechanical, plumbing and electrical systems are complete and operable, and the Building Automation System is installed and operational and in control of the HVAC Systems; and (7) shall have obtained all final Certificates of Occupancy for the Project (except in the event Contractor is directed to obtain Temporary or Partial Certificates of Occupancy pursuant to Article 4.11). The date when the Project has achieved Substantial Completion shall be established by written certifications by the Architect and the Development Manager. Contractor shall give reasonable advance notice to the Development Manager and Architect as to when it believes the Project will reach Substantial Completion so that the Development Manager and Architect can timely inspect the Project so as to determine whether the Project has reached Substantial Completion. Contractor shall be responsible for the Architect's inspection fees should the Project not be Substantially Complete by the date Contractor calls for the Substantial Completion inspection.

4.5.1 Contractor shall complete all the work on Owner's Punch List on a time is of the essence basis and prioritized to meet the needs of Owner. Contractor shall diligently complete all items on Owner's Punch List by the Guaranteed Final Completion Date. Contractor shall be responsible for the Architect's inspection fees should the Project not be Substantially Complete by the date Contractor calls for the Substantial Completion inspection.

4.5.2 In the event Contractor either (1) fails to complete the items on Contractor's Punch List by the Guaranteed Substantial Completion Date, or (2) fails to complete the items on Owner's Punch List, Condominium Association's Punch List and the Condominium Unit Owner's Punch Lists (including any existing Warranty Items) within ninety (90) days of Substantial Completion Date Notice, the Development Manager shall have the option of correcting and/or completing any such outstanding items and deducting the cost thereof, plus a twenty percent (20%) management fee, from the outstanding balance of the Contract Sum (less savings). If that amount is insufficient, then Contractor shall promptly pay such amount to Owner. The term "Final Completion" shall be the date when the Project has achieved Final Completion in accordance with the requirements of this Agreement and all of the Contract Document, as certified, in writing, by the Development Manager and Architect, and all of the items on Owner's Punch List, Condominium Association's Punch List and the Condominium Unit Owner's Punch Lists have been fully and finally completed in strict compliance with the Contract Documents as certified, in writing, by the Development Manager and Architect, and Contractor has completely performed all of its obligations under and in accordance with the Contract Documents.

**4.6** Contractor shall perform the Work in accordance with the Project Progress Schedule (Exhibit H) prepared by Contractor and approved by the Development Manager. Contractor shall meet all milestone dates and each completion date for each portion of the Project. During the progress of the Work, Contractor shall deliver to the Development Manager and the Architect monthly updates as required by Article 2.3.

MC000016229

# EXHIBIT 8

**4.7** The Project Progress Schedule contains anticipated days for adverse weather preventing performance of the Work. Contractor shall not be entitled to extensions of time or an increase in the Contract Sum for delays due to adverse weather, unless the number of adverse weather days exceeds the number which is the average number of days of adverse weather for the five worst weather years in the past ten years ("excess adverse weather days"), and Contractor can demonstrate that the number of excess adverse weather days affect the critical path that there are no concurrent Contractor delays and Contractor could not adjust the Work to make up the time. In the event of excess adverse weather days for which Contractor is entitled to an extension of time, Contractor shall be entitled to a time extension only, and not a Change Order for additional costs or an increase in the GMP or Contract Sum.

**4.8** Owner shall have the right to accelerate the performance of the Work to make up the time lost due to force majeure. It is expressly agreed that force majeure shall not include excess adverse weather days, which are defined in, and governed by, Article 4.7. In the event Owner elects to accelerate the performance of the Work to make up the time lost due to force majeure, Contractor shall be entitled to be compensated for its actual, direct additional costs to accomplish such acceleration, without any mark-up for profit.

**4.9** Contractor acknowledges and accepts responsibility to achieve Substantial and Final Completion of the Project by their respective scheduled and guaranteed dates, and to use all means necessary to do so, at no increase in the Contract Sum, including, but not limited to overtime, double shift work, employing additional subcontractors and expediting delivery of materials by air freight.

## ARTICLE 5  BASIS FOR PAYMENT

### 5.1 CONTRACT SUM

5.1.1 Owner shall pay Contractor the Contract Sum in current funds for Contractor's performance of the Contract. The Contract Sum includes the Cost of the Work as defined in Article 7, plus Contractor's Fee and the fixed limit of General Conditions.

5.1.2 Contractor's Fee: Contractor's Fee shall be the fixed sum of Two Million Three Hundred Seventy Five Thousand Dollars ($2,375,000.00). Contractor's Fee includes the following:

1. Salaries of all officers of Contractor that may be employed at the Project Site full-time or part-time with respect to the Work.

2. Salaries of persons employed in the main or branch offices of Contractor whose time is devoted to the general conduct of Contractor's business, such as office managers, purchasers, stenographers, plan clerks, file clerks, and draftsmen.

MC000016230

# EXHIBIT 8

3. Overhead or general expenses of any kind except those specifically included in Article 7.

4. Services and expenses of the estimating, personnel, accounting, project accounting, cost engineering, audit and management information systems departments, whether in Contractor's home office or at the Project Site.

5. Interest on Contractor's capital or on money borrowed by Contractor, including the capital employed by Contractor in the performance of the Work.

6. Amounts required to be paid by Contractor for federal and/or state income and franchise taxes.

7. Legal, accounting or other similar professional services provided by or to Contractor, except in regard to litigation or disputes with Subcontractors or with municipal authorities provided that such litigation or disputes is directly related to the Work and has not been caused by Contractor's violation of the Contract or Contractor's negligence, simple or gross, or intentionally wrongful act.

8. Preconstruction and engineering services.

9. Costs of any local or state occupational or business licenses required of Contractor, and any dues, assessments or contributions paid to Contractor's technical or trade associations.

5.1.3 General Conditions: Contractor shall be paid for General Conditions the fixed sum amount Four Million, Six hundred Thousand Dollars ($4,600,000.00) of the items set forth on Exhibit E, (which contains an itemized statement of the elements of the General Conditions for which specific costs are stated), as well as all other usual and customary General Conditions items, including, but not limited, to Contractor's cost of insurance (as required by Article 11 of the General Conditions); coordination of shop drawings; samples; utilities; and the management and operations of Contractor, (including all local travel), for which no specific cost is stated in Exhibit E, it being understood that Contractor in Exhibit E has not listed and allocated costs for all items of the General Conditions. The fact that what would otherwise be a General Conditions item is not expressly stated in Exhibit E shall in no manner permit Contractor to include such General Conditions item and the cost therefore in the Cost of the Work.

5.1.4 Cost of the Work: The Cost of the Work shall be all costs and expenses to perform the Work as provided in Article 7, other than Contractor's Fee and the General Conditions.

14

MC000016231

# EXHIBIT 8

## 5.2 GUARANTEED MAXIMUM PRICE

5.2.1 The sum of the Cost of the Work (i.e. $62,000,000.00) as set forth in Exhibit D), and inclusive of the General Conditions (i.e., $4,600,000.00 as set forth in Article 5.1.3) and Contractor's Fee (i.e., $2,375,000.00 as set forth in Article 5.1.2) together with the Contingency (i.e., $271,000.00 as set forth in Exhibit D is guaranteed by Contractor not to exceed Sixty-Two Million Dollars ($62,000,000.00), as further specified in Exhibit D - GMP Breakdown, subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price, or "GMP." Notwithstanding any provisions of this Agreement to the contrary, costs which would cause the GMP to be exceeded shall be paid by Contractor without reimbursement by Owner. -Contractor shall pay for all costs in excess of the GMP to perform the Work and complete the Project. In the event that the final, actual, certified total Cost of the Work, General Conditions and Contractor's Fee shall be less than the GMP, resulting in "savings," Contractor shall receive 25% of any such savings and Owner shall receive 75% of such savings.

5.2.2 The Guaranteed Maximum Price is based on the Alternates in Exhibit P. Contractor agrees to bear the cost for any alternate or additional information or material required to fully and properly incorporate any alternate into the Work.

5.2.3 Unit prices are stated in Exhibit Q.

5.2.4 Contingency Amounts are stated in Exhibit D.

5.2.5 Assumptions on which the Guaranteed Maximum Price is based are stated in Exhibit A.

5.2.6 Contractor has been provided with substantial information identifying the paramaters and details of the Project. Contractor agrees that it has a fiduciary duty to prosecute the completion of the Project within the GMP. The Construction Documents in Exhibit A are approximately 85% complete. Based on Contractor's knowledge of the Project, Contractor has provided the GMP based upon Construction Documents to be completed, subsequent to the execution of this Agreement. Contractor represents that the GMP is adequate to cover the entirety of the Cost of the Work, and has included costs in its GMP in contemplation and expectation of the design details and specifications in the eventual final Drawings and Specifications (Exhibit A-1) that are consistent with a first class quality level consistent with other "Class A" residential Condominium Project in the District of Columbia and the existing Contract Documents, and that which are reasonably inferable therefrom. The finalization of the Drawings and Specifications includes all items that can be reasonably inferred from the above criteria and, as defined in Article 2.4 and 2.5.

MC000016232

# EXHIBIT 8

5.2.7  Upon execution of this Agreement and throughout the completion of the design period, Contractor shall promptly notify the Architect and Development Manager of any area or details in the Drawings and Specifications and other Contract Documents which are either vague, incomplete, erroneous or confusing and shall assist the Architect in clarifying, resolving and correcting such items so as to bring the Cost of the Work within the GMP.  At the same time, Contractor shall promptly identify potential areas and items that may result in damages ("anticipated changes") and shall assist the Development Manager in preparing a list of such items so that Contractor and Development Manager can avoid the risk of any increases to the GMP.  Contractor shall not be entitled to make a claim for additional cost or time if Contractor fails to notify the Architect and the Development Manager in a timely fashion of any anticipated changes of which Contractor is aware and that require an increase in the GMP.  This obligation shall be of a continuing nature, and shall apply to the Drawings and Specifications until the Project is complete.  The Architect's contract shall contain a provision requiring the design to meet the budget established by Owner and the Development Manager.

5.2.8  All "Contingencies" and "Allowances" not used shall be refundable 100% to Owner at the time of final payment.  The Guaranteed Maximum Price includes a "Contingency" which will be available, with the Development Manager's written approval, to cover unforeseen conditions and Work resulting from the finalization of and changes to the Plans, Specifications and other Contract Documents, and in accordance with 5.2.1.

5.2.9  The Contract Sum includes amounts for, and Contractor shall be responsible to pay for, all utilities (including all hook-up and other fees and deposits) needed and/or used to perform the Work and to complete the construction of the Project.  Contractor shall pay for all fees and deposits to perform the Work and construct the Project.  If additional utilities are needed to be brought to the, Project Site, Contractor shall arrange therefore, and Owner shall pay for such utility costs in addition to the GMP.

## ARTICLE 6  CHANGES IN THE WORK

**6.1** The following provisions shall govern changes to the Contract Sum, and shall have precedence over the provisions of General Conditions Article 7, as modified or supplemented.

**6.2** The Development Manager at any time, by written instructions or drawings, may make changes in the Drawings and Specifications, issue additional instructions, require additional work or direct the omission of work previously ordered, and the provisions of this Agreement shall apply to all such changes, modifications, and additional Work with the same effect as if they were embodied in the original Drawings and Specifications.

MC000016233

# EXHIBIT 8

**6.3** Within ten (10) days of the date of Development Manager's request, Contractor shall submit, for the approval of the Development Manager, Change Orders increasing or decreasing the Contract Sum to cover changes in or from the Drawings and Specifications or other Contract Documents. In the case of added Work or less Work, such Change Orders shall indicate in detail to the satisfaction of the Development Manager in its sole discretion, the additional cost of the added Work, or the reduction in cost occasioned by the reduced Work, whether performed by Subcontractors or by Contractor's own forces. A Change Order shall not increase or otherwise change the Contract Time or the Guaranteed Substantial Complete Date unless the Change Order sets forth expressly the number of days by which the Contract Time is to be changed, and specifies the new Guaranteed Date of Substantial Completion. Absent such express language, all claims by Contractor for an extension of time based upon or relating to the Change Order shall be waived.

**6.4** No increase shall be made to the Contract Sum and no work shall be performed by Contractor by reason of any Change Order unless the Development Manager has been advised of such increase by Contractor and such increase in the Contract Sum has been approved in writing by the Development Manager, except where (1) a dispute exists as to whether Work has changed or a dispute exists as to the cost of changed Work and (2) the Development Manager has issued a written direction to Contractor that the Work be done. Contractor shall be paid in accordance with the Contract Documents for completed work on approved changes that are properly processed and approved.

**6.5** In the event the net amount of a Change Order shall increase the Cost of the Work, as specified in the GMP, and performed under this Agreement, the Contract Sum shall be increased as provided in Article 5 and the Contract Documents. If a Change Order shall decrease the Cost of the Work, the Contract Sum shall be decreased by an amount equal to the reduction in cost. Changes in the Work which involve a substitution of materials, equipment or labor, or any other aspect of the work shall be processed through a single Change Order to ascertain whether there is any net increase or net decrease in the Cost of the Work. If the change can be accomplished paralleling other Work activities (i.e., not a critical path item), no increase in time shall be allowed.

**6.6** Contractor shall receive a "Change Order Fee" (defined below) on Change Order Work which exceeds the first Change Orders having an aggregate net value of $250,000.00, provided, however, that Contractor shall in no event receive a Contractor Change Order Fee for any individual change that has a value of less than $25,000. All changes shall be based on approved Unit Prices (Exhibit Q). Contractor's "Change Order Fee," covering overhead, profit, and General Conditions for Changes in the Work, if performed solely with Contractor's own forces shall be four percent (4%) of the total Cost of the Change Order Work. If said change is performed by other forces, the Change Order Fee, after the Two Hundred Fifty Thousand Dollars ($250,000.00) and the Twenty-Five Thousand Dollars ($25,000.00) threshold referenced above have been exceeded, shall be determined as follows:

MC000016234

# EXHIBIT 8

6.6.1 The Work is performed exclusively with Subcontractor forces (i.e., without sub-subcontractors), fees on the net cost of all changes to the Work shall be as follows:

> (i) Four percent (4%) to Contractor for all overhead and profit;
> (ii) Ten percent (10%) to Subcontractor for all overhead and profit.

Total: Fourteen percent (14%).

6.6.2 If the Change Order Work is performed solely with sub-subcontractors, the Change Order Fee on the increased net cost of all changes to the Work shall be Four percent (4%) to Contractor for all overhead and profit; Five percent (5%) to Subcontractors and Ten percent (10%) to Sub-subcontractors for a total Change Order Fee of Nineteen percent (19%).

**6.7** Fees for Change Order Work shall be computed based upon the net aggregate amount of each said Change Order Work (i.e., credits, substitutions and/or reduced work shall be netted out before applying the Change Order Fee). Contractor shall provide the Development Manager with any and all documentation and information from Contractor and its Subcontractors for the Development Manager to determine the proper amount for any Change Order. If Contractor fails to provide this documentation and/or information within thirty (30) days of the date of the Development Manager's request to Contractor, Contractor shall forfeit its rights to a Change Order Fee.

## ARTICLE 7   COSTS TO BE REIMBURSED

### 7.1   COST OF THE WORK

The Cost of the Work by line item is listed on Exhibit D. This is the schedule of values, herein referred to as the Trade Payment Breakdown, and also includes Contractor Fee separately stated. The term "Cost of the Work" shall mean actual costs incurred by Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard rates paid at the place of the Project except with prior consent of Owner. The Cost of the Work shall include only the items set forth in this Article 7.

### 7.2 LABOR COSTS

7.2.1 Wages of construction workers directly employed by Contractor to perform the construction of the Work at the Project Site (excluding bonuses, commissions and extraordinary payments) or, with the Development Manager's written approval, at off-site workshops.

7.2.2 Wages or salaries of Contractor's supervisory and administrative personnel when stationed at the Project Site and assigned full time to the Project with the Development Manager's written approval.

MC000016235

# EXHIBIT 8

7.2.3 Wages and salaries of Contractor's supervisory or administrative personnel necessary to expedite the production or transportation of materials or equipment required for the Work, but only for that portion of their time actually spent in performing such expediting.

7.2.4 Costs paid or incurred by Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Subparagraphs 7.2.1 through 7.2.3 above and provided that any self insurance cost shall be at least lower than the cost of any insurance available in the marketplace.

## 7.3 SUBCONTRACT COSTS

7.3.1 Payments made by Contractor to Subcontractors in accordance with the requirements of the Subcontracts.

## 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION

7.4.1 Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction of the Project.

7.4.2 Costs of materials described in the preceding Subparagraph 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become Owner's property at the completion of the Work or, at the Development Manager's direction, shall be sold by Contractor. Any amounts realized from such sales shall be credited to Owner as a deduction from the Cost of the Work.

## 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS

7.5.1 Costs, including transportation and storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers, that are provided by Contractor at the Project Site and fully consumed in the performance of the Work; and cost (less salvage value) of such items if not fully consumed, whether sold to others or retained by Contractor. Cost for items previously used by Contractor shall be at or below fair market value.

7.5.2 Rental charges for power operated equipment required for the Work supplied by Contractor or rented from others at rates approved, in writing, by the Development Manager. All equipment shall be delivered in good condition and thereafter all charges for operating and maintaining equipment shall be charged at cost. Normal wear and tear, repair costs of a capital nature and depreciation

MC000016236

# EXHIBIT 8

charges on equipment shall not be charged but shall be covered by the rental charged. Rental charged shall be at the lowest prevailing local rates. A schedule of the rental rates and equipment valuations shall be submitted to Development Manager for approval. Rental charges for each item of Contractor owned equipment or tools furnished by Contractor shall be charged to the Cost of the Work until such time as the aggregate of such rentals for any items equals eighty-five percent (85%) of the agreed value of that item as established in Exhibit U entitled "Equipment Value/Rental Rate Schedule and Equipment Log": thereafter, only routine repair and maintenance costs for servicing such items shall be charged to the Cost of the Work for the balance of the period that the equipment and tools are used in performance of the Work. The rates in Exhibit U shall not exceed the Associated Equipment Distributors Guidelines for Rental Rates or any lesser rate that may be obtained from a Third Party for any equipment charged to the Project. Contractor shall maintain and furnish to Development Manager an equipment log to track all equipment valued in excess of Five Hundred Dollars ($500.00) for which rental is charged to the Project. This equipment log (See Exhibit U) shall be submitted each month with Contractor's progress pay application as part of the documentation for the equipment charges. All power tools, equipment, or other devices, for which rent is charged to the Project shall be removed from the Project Site in order to terminate the rental charges as soon as possible.

   7.5.2.1 Owner's Option to Purchase Equipment. If the aggregate rental charges paid by Owner for any piece of equipment owned by Contractor shall equal or exceed eighty-five percent (85%) of the established value of such equipment in accordance with Exhibit U, Owner shall have the option to purchase such equipment from Contractor. The purchase price for such equipment shall be the difference between depreciated the market value of the equipment and the aggregate rental charges paid by Owner to Contractor for such equipment. Owner shall exercise the option to purchase the equipment prior to the issuance of the Certificate of Final Completion for the Work or prior to Contractor's request for removal of such equipment from the Project.

7.5.3 Costs of removal of debris from the Project Site.

7.5.4 Costs of necessary and reasonable document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the Project Site and reasonable petty cash expenses of the Contractor's Project Site office.

7.5.5 That portion of the reasonable expenses of Contractor's personnel incurred while traveling outside the Northern Virginia/Washington DC/Baltimore regional area in discharge of duties connected with the Work. All long distance travel must be pre-approved, in writing, by the Development Manager. "Local Travel" shall mean travel to, from and around the Northern Virginia/Washington DC/Baltimore regional area.

MC000016237

# EXHIBIT 8

7.5.6  Costs of materials and equipment suitably stored off the Project Site at a mutually acceptable location if approved, in writing, in advance by the Development Manager.  The Subcontractors and Contractor shall not bill or be paid for materials and equipment that are "in stock" and not segregated for and to be promptly incorporated into the Work.  Material and equipment needed for the Work shall be stored on site and Contractor will provide security for same.  Contractor shall provide insurance coverage for the full value of all stored materials and equipment consistent with the requirements of the Development Manager and the Contract Documents.

7.5.7  The Development Manager shall be entitled to use, on a shared basis, the on-site offices of Contractor, and Contractor shall make available to the Development Manager such furniture (e.g., desks, chairs, etc.), telephone usage (including, long-distance calls), computer access, secretarial services, telecopier use, conference room use, and other routine office services as are needed by the Development Manager to conduct its operations.  The reasonable cost of Development Manager's usage of the Project Site office shall be included as a Cost of the Work.

## 7.6  MISCELLANEOUS COSTS

7.6.1  That portion of insurance and bond premiums that can be directly attributed to the Contract.

7.6.2  Sales, use or similar taxes imposed by a governmental authority that are related to the Work, except as provided in Article 5.2.1.

7.6.3  Fees and assessments for all permits, licenses and inspections for which Contractor is required by the Contract Documents to pay.

7.6.4  Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Subparagraph 13.5.3 of AIA Document A201-1997 or other provisions of the Contract Documents, and which do not fall within the scope of Subparagraph 7.7.3.

7.6.5  Royalties and licensee fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against Contractor resulting from such suits or claims and payments of settlements made with the Development Manager's consent.  However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of Contractor's Fee or subject to the Guaranteed Maximum Price.  If such royalties, fees and costs are excluded by the last sentence of Subparagraph 3.17.1 of AIA Document A201-1997 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

MC000016238

EXHIBIT 8

7.6.6  Deposits lost for causes other than Contractor's negligence or failure to fulfill a specific responsibility to Development Manager as set forth in the Contract Documents.

7.6.7  Legal, mediation and arbitration costs, including reasonable attorneys' fees, other than those arising from disputes between Owner, Development Manager, Architect and Design Team Members and Contractor, reasonably incurred by Contractor in the performance of the Work and with the Development Manager's prior written approval.

7.6.8  Expenses incurred for relocation to, but not from, the Project Site and temporary living allowances of personnel required for the Work, if approved in writing by the Development Manager.

### 7.7  OTHER COSTS AND EMERGENCIES

7.7.1  Other costs incurred in the performance of the Work of an emergency nature if and to the extent reasonably approved in advance in writing by the Development Manager.

7.7.2  Costs due to emergencies incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Paragraph 10.6 of AIA Document A201-1997 *As modified herein*

7.7.3  Costs of repairing or correcting damaged or nonconforming work executed by Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by violations of the Contract Documents negligence or failure to fulfill a specific responsibility of Contractor and only to the extent that the cost of repair or correction is not recoverable by Contractor from insurance, sureties, or Subcontractors.

## ARTICLE 8  COSTS NOT TO BE REIMBURSED

**8.1**  The Cost of the Work shall not include:

8.1.1  Salaries, expenses and/or other compensation of Contractor's personnel stationed at Contractor's principal office or offices other than the Project Site office, except as specifically provided in Subparagraph 7.2.2 and 7.2.3 or as may provided in Article 14.

8.1.2  Expenses of Contractor's principal office and offices other than the Project Site office.

8.1.3  Overhead and general expenses, except as may be expressly included in Article 7.

8.1.4  Contractor's capital expenses, including interest on Contractor's capital used to perform the Work and Contractor's obligations under the Contract Documents.

MC000016239

# EXHIBIT 8

8.1.5  Rental costs of machinery and equipment, except as specifically provided in Subparagraph 7.5.2.

8.1.6  Except as provided in Subparagraph 7.7.3 of this Agreement, costs due to the negligence or failure to fulfill a specific responsibility of Contractor and/or Subcontractors or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

8.1.7  Any cost not specifically and expressly described in Article 7.

8.1.8  Costs, other than costs included in Change Orders approved, in writing, by the Development Manager that would cause the Guaranteed Maximum Price to be exceeded.

8.1.9  Costs due to the negligence of, wrongdoing of, or violation of this Agreement by Contractor, any Subcontractor, anyone directly or indirectly employed by any of them, or for those acts that any of them may be liable, including, but not limited to, the correction of defective or non-conforming Work, disposal of materials and equipment wrongly supplied, or making good any damage to property or performing any warranty work.

8.1.10  Automobile repairs for Contractor's vehicles.

8.1.11  Any cost or expenses (including legal fees) relating to the bankruptcy of any Subcontractor.

8.1.12  Fringe benefits, bonuses, mileage and commuting, travel or car expenses and allowances for any of Contractor's employees, other than that required by local union rules except as approved, in writing, in advance and agreed to by the Development Manager.

8.1.13  Costs of any education or training of employees of Contractor.

## ARTICLE 9  DISCOUNTS, REBATES AND REFUNDS

**9.1**  Cash discounts obtained on payments made by Contractor shall accrue to Owner if (1) before making the payment, Contractor included them in an Application for Payment and received payment therefor from Owner, or (2) Owner has deposited funds with Contractor with which to make payments; otherwise, cash discounts shall accrue to Contractor.  Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to Owner, and Contractor shall make provisions so that they can be secured.

**9.2**  Amounts that accrue to Owner in accordance with the provisions of Paragraph 9.1 shall be credited to Owner as a deduction from the Cost of the Work.

**9.3**  The Costs of the Work shall be credited with the following items:

MC000016240

# EXHIBIT 8

9.3.1 Proceeds of the sale of all tools, surplus materials, construction equipment and temporary structures which have been charged to the Work other than by way of rental, and remaining after completion, whether such sale is made to Owner, Contractor, or to some other party; and any such sale, if made to others than Owner, shall be at fair and competitive market price and terms. Upon completion of the Work, or when no longer required, all tools, construction equipment and materials purchased for the Work shall be sold and Contractor shall use its best efforts to obtain the highest prices in respect of such sales.

9.3.2 Contractor shall provide to Owner reasonable credit for all tools, construction equipment and materials returned to Contractor.

9.3.3 Discounts earned by Contractor through advance or prompt payments, provided that Owner has advanced the funds. Contractor shall obtain all possible trade and time discounts on bills for material furnished, and shall pay said bills within the highest discount periods. Contractor shall purchase in such quantities as will provide the most advantageous pricing to Owner. Contractor shall advise the Development Manager in a timely manner of potential discounts that may be realized.

9.3.4 Reasonable market value as approved by the Development Manager at the time of removal of all materials, tools, and equipment actually used on the Work (and included as a Cost under Article 7) and upon completion of the Work retained by Contractor.

9.3.5 The full amount of all deposits made in connection with the Work.

9.3.6 Any and all rebates, discounts, or commissions allowed to or collected by Contractor from Subcontractors, together with all other refunds, returns, or credits received for return of materials, or on bond premiums, insurance, taxes, or otherwise.

## ARTICLE 10    SUBCONTRACTS AND OTHER AGREEMENTS

10.1 Those portions of the Work that Contractor does not customarily perform with Contractor's own personnel shall be performed under Subcontracts or by other appropriate agreements with Contractor. The Development Manager may designate specific persons or entities from whom Contractor shall obtain bids. Contractor shall obtain bids from the Subcontractors and from suppliers of materials or equipment fabricated especially for the Work (a minimum of three (3) bids are required for Subcontractors or purchase orders above $50,000.00 in value) and shall deliver such bids to the Development Manager. Contractor shall determine, with the advice of the Development Manager, which bids will be accepted. Contractor shall not contract with anyone to whom the Development Manager has objection.

MC000016241

# EXHIBIT 8

**10.2** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Development Manager. Subcontracts shall contain a retainage provision similar to Article 12.1.7.

**10.3** Subcontracts shall incorporate the terms and conditions of the Contract Documents.

## ARTICLE 11   ACCOUNTING RECORDS

**11.1**   Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Agreement, and the accounting and control systems shall be satisfactory to the Development Manager. The Development Manager and Owner's accountants shall be afforded access to, and shall

**11.2**   be permitted to audit and copy, Contractor's and Subcontractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to the Contract Documents, and Contractor shall preserve these for a period of five (5) years after final payment or for such longer period as may be required by law.

## ARTICLE 12   PAYMENTS

### 12.1 PROGRESS PAYMENTS

12.1.1 Based upon Applications for Payment (Exhibit F) submitted to the Development Manager by Contractor and Certificates for Payment issued by the Development Manager and Architect, Owner shall make progress payments on account of the Contract Sum to Contractor as provided below and elsewhere in the Contract Documents.

12.1.1.1 Exhibit D contains a Trade Payment Breakdown showing the Cost (or estimated cost) of the various portions of the Work, i.e. the line-item limits for each portion (excluding Contractor's Fee, General Conditions and Contractor's contingency if any, all of which shall be separately stated in Exhibit D) aggregating the Contract Sum, and specifying the amount allocable to each portion of the Work and to each Subcontractor/trade. The Trade Payment Breakdown shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that Contractor's Fee and General Conditions shall be shown as separate items. The Trade Payment Breakdown shall be prepared in such form and supported by such data to substantiate its accuracy as the Development Manager may require. No changes shall be permitted in the line-item amounts unless it can be demonstrated that costs in excess of a line-item limit can be covered by savings in another line-item in an equal amount and that the balance to complete the Work is adequate; in all events, such adjustments must be approved by the Development Manager. Simultaneously with each Application for Payment, Contractor shall furnish the Development Manager with a

MC000016242

# EXHIBIT 8

revised Trade Payment Breakdown containing all revisions (if any) in the Costs (or cost estimates) from that contained in the previously submitted Trade Payment Breakdown. In the event that at any time as determined by the Development Manager in its sole discretion the aggregate amount shown on the Trade Payment Breakdown exceeds or may exceed the Contract Sum, the amount payable by Owner to Contractor with respect to such Application for Payment shall be reduced by the amount of such excess, it being intended that at all times the estimated cost of performing the uncompleted and unpaid portion of the Work (including Contractor's Fee and General Conditions ) shall not exceed the unpaid balance of the Contract Sum (less retainage on Work previously completed).

12.1.2 The period covered by each Application for Payment shall be one calendar month ending on the 25th day of the month.

12.1.3 Provided that an Application for Payment is received by the Development Manager not later than the 25th day of a month, Owner shall make payment to Contractor not later than the 15th day of the following month. If an Application for Payment is received by the Development Manager after the Last day of a month, payment may be withheld by Owner until but no later than the 15th day of the following month.

12.1.4 With each Application for Payment, Contractor shall submit payrolls, petty cash accounts, receipted invoice or invoices with check vouchers attached and any other evidence required by the Development Manager to demonstrate that cash disbursements already made by the Contractor or on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor, (2) that portion of those payments attributable to Contractor's Fee and General Conditions, plus (3) payrolls for the period covered by the present Application for Payment.

12.1.5 Applications for Payment shall show the percentage of completion of each portion of the Work on a line item basis as provided in the Trade Payment Breakdown (Exhibit D) as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by Contractor on account of that portion of the Work for which Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the Trade Payment Breakdown.

12.1.6 Each Application for Payment, based upon the Trade Payment Breakdown, Exhibit E, shall include and be accompanied by the following (each of which shall be a condition of payment):

MC000016243

# EXHIBIT 8

1. A Contractor's Application for Payment and Cost Certification Statement, Exhibit F, including a statement by Contractor that all items of construction for which payment is sought have been incorporated into the Project in accordance with the Drawings and Specifications and other Contract Documents or are stored in accordance with the stored materials provisions of the Contract Documents, and a revised Trade Payment Breakdown.

2. A monthly schedule update showing in comparison to the original Project Progress Schedule the current progress of all aspects of the Work. At the election of the Development Manager, such monthly schedule updates shall include an updated dollar and manpower loaded schedule.

3. A current Stored Materials Information Form, Exhibit I, with bills of sale, insurance certificates and other documentation required to transfer unencumbered ownership to Owner or other documentation as the Development Manager may reasonably require.

4. From each Subcontractor to whom payment has been previously made, a fully executed (Partial) Release of Lien and Waiver of Claim form, Exhibit K, with respect to payments to and Work performed by Contractor and Subcontractors. The Releases of Lien and Waivers of Claim shall cover the period through the 25th day of the month prior to the current month, contingent upon payment.

5. Such other documentation or information as required by the Contract Documents.

6. Documentation showing the Architect's written approval of the Work for which application for payment is sought.

7. Documentation and information as requested of Contractor pursuant to Article 2.3.13.

8. Evidence or actual copy of each subcontract (a modification or amendment thereto) with each Subcontractor, to the extent not previously provided.

9. Such other documentation that the Development Manager may require.

12.1.7 Payments to Contractor, including payments of Contractor's Fee, shall be subject to retainage of an amount equal to ten percent (10%) of the amount of the Work, certified, in writing, by the Development Manager and Architect to be payable with respect to the Work performed by Contractor (including Work performed by Contractor's Subcontractors), until the Work is fifty percent (50%) complete as certified by the Architect and Development Manager, provided however, that if the Development Manager determines, in its sole discretion, that the Project is not on time (i.e. the Work is not proceeding in accordance with the

MC000016244

# EXHIBIT 8

Project Schedule), or that the Project will be not completed within the Guaranteed Maximum Price, retainage of ten percent (10%) shall be withheld from future payments, including payments of Contractor's Fee, until the Development Manager determines that these conditions no longer exist. The balance of the retainage shall be released to Contractor at the time of final payment as provided in Paragraph 12.2.6.

12.1.8 In taking action on Contractor's Applications for Payment, the Development Manager and Architect shall be entitled to rely on the accuracy and completeness of the information furnished by Contractor and shall not be deemed to represent that the Development Manager or Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Subparagraph 12.1.4 or other supporting data, that the Development Manager or Architect (and Design Team Members) has made exhaustive or continuous on-site inspections or that the Development Manager and Architect have made examinations to ascertain how or for what purposes Contractor has used amounts previously to the account of Contractor. Such examinations, audits and verifications, if required by the Development Manager, will be performed by Owner's or Development Manager's Agent.

12.1.9 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

1. Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the updated Trade Payment Breakdown. Pending final determination of cost to Owner of Changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997;

2. Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the Project Site for subsequent incorporation of the Work, or if approved in advance by the Development Manager, suitably stored in accordance with the Contract Documents;

3. Add Contractor's Fee, which shall be computed upon the Cost of the Work described in the two (2) preceding clauses and shall be an amount that bears the same ratio to that fixed sum Fee as the Cost of the Work in the two (2) preceding clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion;

4. Add the monthly amount of General Conditions, which shall be computed by multiplying the total General Conditions by the percentage of the Work completed during the period covered by the Application for Payment.

MC000016245

# EXHIBIT 8

5. Subtract retainage of ten percent (10%);

6. Subtract the aggregate of previous payments made by Owner;

7. Subtract the shortfall, if any, indicated by Contractor in the documentation required by Paragraph 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Development Manager or Owner's accountants in such documentation; and

8. Subtract amounts, if any, for which the Development Manager has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.

12.1.10 Contractor shall afford the Development Manager, Architect (including Design Team Members) and Project Lender access to the Project Site and shall take such other steps as they deem necessary to timely and completely verify the Work performed and the amounts requested by Contractor under each Application for Payment. If the Development Manager and Architect are unable to verify any portion of the Work performed or amounts requested prior to the time when Owner is to make payment to Contractor because of the conduct of Contractor, the Development Manager shall be entitled to withhold payment for that portion of the Work and those amounts requested until they have been verified, which Development Manager shall seek to do expeditiously.

12.1.11 Nothing contained in this Article 12 shall require Owner to pay Contractor an aggregate amount exceeding the Contract Sum or to make payment if in the Development Manager believes, in its sole discretion, that the cost to complete the Work (plus the balance of General Conditions and the Contractor's Fee) would exceed the balance of the Contract Sum (i.e. the Contract Sum less previous payments to Contractor).

12.1.12 No increase shall be made to the Contract Sum for any cause whatsoever, whether foreseen on unforeseen, unless made (i) pursuant to a written Change Order executed pursuant to the Contract Documents, or (ii) as provided elsewhere in the Contract Documents.

12.1.13 At Owner's option, in the event of a Project Lender requirement, all funds paid by Owner to Contractor shall be held in a separate bank account for disbursement by Contractor to Subcontractors, and the Development Manager shall receive copies of all bank statements directly from the bank. All funds paid by Owner to Contractor for Work performed by the Subcontractors shall be paid to and held by Contractor for payment of such Subcontractors and shall not be used or constitute funds of Contractor. Within fifteen (15) days after each payment to Contractor, Contractor shall submit to the Development Manager payment receipts in a form satisfactory to the Development Manager, from all Subcontractors showing that Contractor has paid all items of the Cost of the Work

MC000016246

# EXHIBIT 8

reported in the prior certified Applications for Payment which have in fact become due and payable in an amount at least equal to the payments received by Contractor on account of the previously certified costs. In the event Contractor shall fail to present such evidence that all of said payments received by Contractor on account of said costs have been paid to the Subcontractors, any deficiency shall be credited to Owner and deducted from the next or any payment thereafter becoming due hereunder, and if any such failure shall continue for ten (10) days after written notice thereof to Contractor, Owner shall have the right (at Contractor's cost) to require that during all or any portion of the remainder of the term of this Contract any or all amounts payable with respect to any Work not performed by Contractor (i.e., performed by Contractor's Subcontractors) may be paid directly to such Subcontractors by Owner or paid to Contractor and Subcontractors by joint check (or shall be paid to Contractor solely if Contractor presents evidence satisfactory to the Development Manager that Contractor has already paid such Subcontractors for such Work). These provisions are solely for the benefit of Owner and shall not be deemed as conferring any rights upon Subcontractors or relationship of any kind directly or indirectly between the Subcontractors and Owner, and the Subcontractors shall have no right to enforce this provision if Owner elects to or does not exercise its rights under this provision or any other provision of the Contract Documents.

12.1.14 The Owner, the Development Manager, Architect and Project Lender may at any time take such action as any of them deems appropriate to verify that the conditions precedent to each disbursement have been satisfied, including but not limited to, verification of the amounts payable under this Agreement and each Subcontract. Contractor agrees to cooperate with the Development Manager, Architect and the Project Lender in any such action or request for information. If in the course of any such verification any amount shown payable under this Agreement or any Subcontract, Application for Payment, Sworn Statement or Release of Lien and Waiver of Claim, is subject to a possible discrepancy, such discrepancy shall be promptly eliminated by Contractor to the satisfaction of the Owner, the Development Manager, Architect and the Project Lender.

12.1.15 It shall be the responsibility of Contractor to provide the Development Manager, Architect and Project Lender's inspector (if any) with sufficient notice and make all arrangements necessary for the Development Manager, Architect and Project Lender's inspector (if any) to review each Application for Payment and to inspect the Work in place and stored materials.

## 12.2 FINAL PAYMENT

12.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall not be due until the following conditions have been satisfied:

MC000016247

# EXHIBIT 8

12.2.1.1 Contractor has achieved Final Completion of the Project;

> 1. Contractor has fully performed all of the Work and met all of the requirements of the Contract Documents, except for Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment;

> 2. A final Certificate for Payment has been issued by the Architect and the Development Manager and a Completion Certificate (Exhibit T) has been executed by all parties; and

> 3. The conditions set forth in Article 12.2.6 have been met.

12.2.2 Owner's final payment to Contractor shall be made no later than thirty (30) days after Contractor has satisfied the requirements set forth in Article 12.2.1. and as otherwise provided in the Contract Documents.

12.2.3 Prior to the Date of Substantial and Final Completion, Contractor shall provide to Development Manager a certified statement of the Final Cost of the Work. The Development Manager's accountants will review and report in writing on Contractor's final accounting to Owner and Project Lender. Based upon such Cost of the Work as the Development Manager's accountants report to be substantiated by Contractor's final accounting, and provided the other conditions of Subparagraph 12.2.1 have been met, the Development Manager will, within seven (7) days after receipt of the written report of the Development Manager's accountants, issue to Owner a final Certificate for Payment with a copy to Contractor, or notify Contractor and Owner in writing of the Development Manager's reasons for withholding a certificate as provided in Subparagraph 9.5.1 of the AIA Document A201-1997. The time periods stated in this Subparagraph 12.2.3 supersede those stated in Subparagraph 9.4.1 of the AIA Document A201-1997.

12.2.4 If the Development Manager's accountants report the Cost of the Work as stated in Contractor's final accounting is determined to be less than claimed by Contractor, Contractor shall be entitled to demand arbitration of the disputed amount. Such demand for arbitration shall be made by Contractor within thirty (30) days after Contractor's receipt of the Development Manager's final Certificate of Payment; failure to demand arbitration within this thirty (30)-day period shall result in the substantiated amount reported by the Development Manager's accountants becoming binding on Contractor. Pending a final resolution by arbitration, Owner shall pay Contractor the amount certified in the Development Manager's final Certificate for Payment.

12.2.5 If, subsequent to final payment and at the Development Manager's request, Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, Owner shall reimburse Contractor

MC000016248

# EXHIBIT 8

such costs and Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If Contractor has participated in savings as provided in Paragraph 5.2, the amount of such savings shall be recalculated and appropriate credit given to Owner in determining the net amount to be paid by Owner to Contractor.

12.2.6 In all events, Final Payment is conditioned upon and shall not be due or owing until:

(a) Contractor shall have delivered to the Development Manager a written, unconditional consent to such disbursement by the issuer of the bonds guaranteeing performance and payment under the Contract Documents.

(b) The Development Manager and the Architect each have determined that the Work (including the existing Condominium Association Punch List, Unit Owner's Punch Lists, and Condominium Warranty Items) is fully and finally complete in strict compliance with the Drawings and Specifications and other Contract Documents.

(c) Contractor shall have delivered to the Development Manager the Project Manual as set forth in the General Conditions, Article 1, including, but not limited to all warranties and operation and maintenance manuals applicable to the Work.

(d) Contractor shall have delivered to the Development Manager an executed final Release of Lien and Waiver of Claim, (Exhibit K), from Contractor, and each and every Subcontractor.

(e) The Development Manager shall have received from Contractor all documents (which are Contractor's responsibility) for the use of the Project, including those which by their nature cannot be obtained prior to completion of the Project. Upon completion of the Work and as a condition of receiving payment of retainage, Contractor shall submit at final completion "As-Built" Drawings and Specifications showing all of the Work, including all changes, locations and installations for the Development Manager's approval and acceptance.

(f) Contractor shall have delivered to the Development Manager a statement from Contractor that there exist no pending or threatened claims of third parties against Owner or the Development Manager relating to the Work, or for which Owner or Development Manager may be liable, which are unresolved.

(g) Any Inspector engaged by the Project Lender shall have delivered its inspection report that the Work is fully and finally complete in strict

MC000016249

# EXHIBIT 8

compliance with the Drawings and Specifications and other Contract Documents.

(h) All deposits and any bonds posted by Owner shall be extinguished and returned to Owner. Contractor is not responsible for performance of D.C. government.

(i) Contractor shall have met all of its insurance, indemnification and all of its other obligations under the Contract Documents

(j) Documentation and information as requested of Contractor pursuant to Article 12.1.17.

(k) In the event a Subcontractor fails to provide a Final Release of Lien and Waiver of Claim and Contractor provides a Final Release of Lien and Waiver of Claim, Contractor agrees to set aside any amounts owed to the Subcontractor in an escrow account controlled by both Owner and Contractor until the matter is finally resolved. Contractor further agrees to indemnify and defend Owner and Project Lender from any and all liability resulting therefrom.

12.2.7 Owner, Architect and the Project Lender may at any time take such action as any of them deems appropriate to verify that the conditions precedent to Final Payment have been satisfied, including but not limited to, verification of the amounts payable under this Agreement and each Subcontract. Contractor agrees to cooperate with Owner, Architect and the Project Lender in any such action or request for information. If in the course of any such verification any amount shown payable under this Agreement or any Subcontract, Application for Payment, Sworn Statement or Release of Lien and Waiver of Claim, is subject to a possible discrepancy, such discrepancy shall be promptly eliminated by Contractor to the satisfaction of Owner, Architect and the Project Lender.

## ARTICLE 13    TERMINATION OR SUSPENSION

**13.1** This Agreement may be terminated by the Development Manager for convenience, as provided in Article 14 of AIA Document A201-1997. However, the amount to be paid to Contractor under Subparagraph 14.1.3 of AIA Document A201-1997 shall not exceed the amount Contractor would be entitled to receive under Paragraph 13.2 below. Contractor's Fee shall be calculated based upon multiplying the reasonable estimate for Work actually completed by three and one-half percent (3.5%).

**13.2** Contractor may be terminated by Owner for cause as provided in Article 14 of AIA Document A201-1997. The amount, if any, to be paid to Contractor under Subparagraph

MC000016250

# EXHIBIT 8

14.2.4 of AIA Document A201-1997 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

13.2.1 Take the Cost of the Work incurred by Contractor to the date of termination; less any amounts required to properly complete the Project in accordance with the Contract Documents.

13.2.2 Add Contractor's Fee computed by multiplying the Contractor's Fee by the ratio that the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion;

13.2.3 Add the General Conditions amount which shall be computed by multiplying the General Conditions fixed amount by the percentage of the time expended bears to the total Contract Time, less amounts previously paid to the Contractor for its General Conditions.

13.2.4 Subtract the aggregate of previous payments made by Owner.

13.2.5 Based upon the foregoing computations, if there have been any payments to Contractor of the Contractor's Fee and/or General Conditions, then such amounts shall be deducted from the amount due for the Cost of the Work, if any, or paid by Contractor to Owner.

**13.3** Owner also shall pay Contractor fair compensation, either by purchase or rental at the election of Owner, for any equipment owned by Contractor that Owner elects to retain and that is not otherwise included in the Cost of the Work under Subparagraph 13.2.1. To the extent that Owner elects to take legal assignment of Subcontracts, Contractor shall as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such Subcontracts and other contractual rights of Contractor, as Owner may require for the purpose of fully vesting in Owner the rights and benefits of Contractor under such Subcontractors.

**13.4** The Work may be suspended by the Development Manager as provided in Article 14 of AIA Document A201-1997; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Subparagraph 14.3.2 of AIA Document A201-1997 except that the term "profit" shall be understood to mean Contractor's Fee as described in Paragraphs 5.1.2 (on a pro-rata basis as described in Paragraph 13.2.2) and Paragraph 6.4 of this Agreement.

## ARTICLE 14 MISCELLANEOUS PROVISIONS

**14.1** When reference is made in this Agreement to a provision in AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

MC000016251

# EXHIBIT 8

**14.2** Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

**14.3** Development Manager is:

QDC Development Services
of Washington L.L.C.
1001 G Street, N.W., Suite 700 West
Washington, DC 20001

Attention: Robert J. Knopf
Senior Vice President

**14.4** Contractor's representative is:

Glen Construction Company, Inc.
9055 Comprint Court, Suite 100
Gaithersburg, Maryland 20877

Attention: William M. Sharabi
Chief Executive Officer

**14.5** Neither Owner's nor Contractor's representative shall be changed without ten (10) days written notice to the other party.

**14.6** Other provisions:

14.6.1 Contractor and each Subcontractor shall submit an executed Release of Lien and Waivers of Claim (Exhibit K) with each Application for Payment (partial and final), and progress and final payment shall be conditioned upon Development Manager's receipt and approval thereof. Lien Releases shall specifically designate the parcel and building on which the Work has been performed and which are being released Contractor agrees that in no event shall Contractor at any time file a lien of any kind against the Project. Contractor only shall be entitled to file liens only for amounts certified for payment by the Development Manager and Architect and which remain unpaid by Owner to Contractor for periods in excess of those specified in this Agreement. It is a material obligation of Contractor under this Agreement to keep the existing building and the structures constructed on the existing building free of Subcontractor liens at all times. Contractor agrees that in the event any subcontractor files a lien of any kind against the Project, Contractor immediately shall bond off said Subcontractor lien, regardless of the Subcontractor's entitlement thereto. The Parties agree that violation of this provision by Contractor will cause Owner to suffer irreparable harm for which it will have no adequate remedy at law. Accordingly, the Parties agree that this provision shall be specifically enforceable by Owner, who shall be entitled to seek preliminary and/or permanent injunctive relief to remove said lien. Notwithstanding any provisions to the contrary contained herein, Owner's entitlement to such injunctive relief shall not be subject to arbitration, and Owner shall be entitled to

35

MC000016252

# EXHIBIT 8

obtain such injunctive relief from a court of law. In addition, Contractor shall pay for and indemnify Owner from all damages, losses and expenses (including attorneys' fees) resulting from Contractor's filing a lien, or failing to bond off a Subcontractor lien, in violation of this provision. Contractor agrees that its obligation and its Subcontractors' obligation to provide Releases of Lien and Waivers of Claim shall not be construed to diminish or abrogate in any way Contractor's and the Subcontractors' obligation not to file liens against the Project in violation of this provision.

14.6.2 Subcontract(s) shall require the Subcontractors to comply with the requirements of this Agreement and the Contract Documents. Notwithstanding any provisions in any Subcontract(s) to the contrary, each Subcontract agreement for a portion of the Work is assigned by Contractor to Owner provided that assignment is effective only after (a) issuance of a written directive by Owner notifying the Subcontractor and Contractor that the subcontract agreement has been transferred to Owner; or (b) the termination of the Contract for cause pursuant to Paragraph 14.2 and only for those subcontract agreements which Owner accepts by notifying the Subcontractor and Contractor in writing. Contractor shall remain liable for any acts or omissions of its Subcontractor(s) occurring prior to the effective date of any such assignment(s). In the event of such assignment(s) without termination of the Contract, Contractor shall remain obligated to coordinate the work of subcontract (s) assigned to Owner with the Work, and such assignment(s) shall not otherwise alter or affect Contractor's obligations under the Contract Documents. Contractor shall have the right to require each and every Subcontractor to accelerate the performance of its work at its own cost (and not as a Cost of the Work, except in cases of force majeure) so as to maintain the time requirements of the Project Progress Schedule; Contractor shall require such acceleration of any Subcontractor whose performance is not in compliance with the Project Progress Schedule. Contractor shall be solely responsible for all Subcontractors, and Owner, Development Manager, Architect (including Design Team Members) and Project Lender shall have no privity of contract with or obligations or liabilities to the Subcontractors, except as provided above.

14.6.3 Within fifteen (15) days of the date of this Agreement, Contractor shall prepare and submit for Development Manager's written approval, a shop drawing schedule which indicates estimated submittal and review dates for shop drawings, product data and samples. Where multiple submittals occur in the same time period, Contractor shall provide a priority listing indicating the critical and less critical submittals related to the Project Progress Schedule. Within five (5) days of Contractor executing a Subcontract, Contractor shall advise the Development Manager of any changes to the estimated shop drawing schedule. The Development Manager and Architect (including Design Team Members) shall be entitled to rely upon the Shop Drawing Schedule provided by Contractor with respect to their performance of their obligations under the Contract Documents and they, and Owner shall not be liable for any delays or costs by virtue of

MC000016253

# EXHIBIT 8

changes in the schedule of which the Development Manager and Architect are not given sufficient prior notice.

14.6.4  Whenever Contractor shall submit to the Development Manager, in accordance with the provisions and requirements of the Contract Documents, requests for approval of, including, without limitation, Change Orders or claims for an increase in the Contract Sum or extensions of time, and such requests or claims are not approved, such may be considered by Contractor to constitute a claim or dispute, and may be arbitrated by Contractor at any time prior to Final Payment; however, in no event shall Contractor stop or slow its performance of the Work pending the resolution of any such claim or dispute.

14.6.5  Contractor shall not be entitled to claim damages for Contractor not being able to achieve the Final Completion Date sooner than the Guaranteed Completion Date specified in Article 4.

14.6.6  Owner will pay for building materials, whether stored onsite or offsite, approved by the Development Manager and intended to be incorporated into the Project pursuant to the Drawings and Specifications, provided that the purchase be pursuant to Article 7.5.7 and not until the Development Manager shall have received (a) bills of sale and other documentation evidencing payment in full for such materials prior to the subsequent Application for Payment, Owner's ownership thereof and the release of any right, title or lien in respect thereof by any vendor (or that such payment and release of vendor rights will be made out of the funds so requisitioned by Contractor), and (b) evidence that such materials are covered for their full value by Contractor's insurance for the location of storage and are identified and protected against loss, theft and damage in a manner acceptable to the Development Manager.

14.6.7  To be effective a notice from Contractor to the Development Manager of a claim for additional cost must within the time required by the Contract Documents: (1) specifically and in detail describe the nature and cause of the claim, (2) specifically reference the details on the Drawings and the sections of the Specifications that are affected, and (3) contain a good faith estimate of the amount of the claim, unless Contractor can establish that it is not possible to meet these requirements within the time allocated by the Contract Documents.  A general statement that all claims are reserved shall not satisfy this requirement.

14.6.8  The Development Manager has afforded Contractor with unrestricted access to the existing improvements and conditions on the Project Site, including the existing structures (parking lot and foundations), and has given Contractor the opportunity to thoroughly investigate (including by selective demolition) the existing improvements and conditions, and the Adjacent Properties, which Contractor represents that it has done.  The results of Contractor's investigation have been taken into account in establishing the Contract Sum for the Work. Contractor shall not be entitled to any claim under Articles 4 and 8 of the General Conditions for conditions which Contractor discovered or ought to have

MC000016254

# EXHIBIT 8

discovered in Contractor's investigation. Before proceeding with the Work, Contractor shall review the Drawings and Specifications and notify the Architect and Development Manager of any errors, omissions or discrepancies in the Drawings and Specifications it discovers with respect to the existing conditions. Contractor shall not proceed with the Work, or any portion thereof, if prior to its performing any portion of the Work, any defect, defined as any error, omission, conflict, inconsistency or lack of clarity, is known or should be known by Contractor to exist in the Drawings or Specifications or other Contract Documents, and if Contractor nevertheless proceeds to perform the Work then Contractor shall be responsible for all foreseeable resulting costs, including the cost of redoing or remedying the Work and time delays resulting therefrom. Upon discovering a defect in the Drawings or Specifications, or other Contract Documents, Contractor shall immediately submit a written request for an explanation or decision to the Architect and the Development Manager. Any change by Contractor in the Work detailed or specified in the Drawings or Specifications or other Contract Documents without a prior written determination by the Architect and the Development Manager shall be at Contractor's sole risk and expense. For cost purposes only, the following priorities shall prevail:

    (a) The Specifications shall govern and take precedence over all Drawings.

    (b) Detail Drawings shall have priority over the drawings or plans.

    (c) Large scale details and plans or drawings shall have priority over small scale details and plans or drawings.

Notwithstanding the foregoing, in case of discrepancies between the Contract Documents, the material, system or equipment of better quality shall take precedence.

14.6.9 No provision contained in this Agreement or the Contract Documents shall create or give any third party any claim or right of action against Owner, the Development Manager, the Project Lender, the Architect (including the Design Team Members) or Contractor beyond such as may legally exist in the absence of any such provision. It is expressly understood and agreed that Contractor has made no promises or agreements to, or for the benefit of, any prospective Purchaser of a Condominium Unit.

14.6.10 This Agreement and the Contract Documents constitute the entire agreement between the parties hereto and cannot be changed orally but only by an instrument in writing signed by Owner, the Development Manager and Contractor; nor can the provisions hereof be waived except by an express waiver in writing.

14.6.11 Contractor shall execute and deliver to the Development Manager each and every Exhibit to this Agreement as and when required by the Contract Documents and by the Development Manager. Contemporaneous with the

MC000016255

# EXHIBIT 8

execution of this Agreement, Contractor shall execute and deliver to the Project Lender, the Agreement of Contractor to Complete in the form of Exhibit R hereto.

14.6.12 All notices required or permitted hereunder shall be in writing and delivered personally or by registered or certified mail (restricted delivery), return receipt requested, postage prepaid to the addresses set forth below:

If to the Owner:

Madrigal Condominiums, LLC
c/o QDC Development Services of Washington,
L.L.C.1001 G Street, N.W., Suite 700W
Washington, D.C. 20001
Attn: Robert J. Knopf, Sr. Vice President

If to the Contractor:

Glen Construction Company, Inc.
9055Comprint Court, Suite 100
Gaithersburg, Maryland 20877
Attention: William M. Sharabi
                    Chief Executive Officer

If to the Architect:

Davis, Carter, Scott, Ltd.
1676 International Drive, Suite 500
McLean, Virginia 22102
Attention: Douglas Carter, Principal

Any party may designate another addressee or change its address by notice given to the other party pursuant to this Article 14. All notices shall be deemed given upon receipt thereof or at the time delivery is refused.

14.6.13 Contractor and its Subcontractors shall not post any signs on or about the Project Site without the prior written approval of the Development Manager.

14.6.14 List of Exhibits:

| Exhibit A: | The Drawings, Specifications and all Addenda, Qualifications and Assumptions |
|---|---|
| Exhibit A-1: | The Final Drawings, Specifications and Addenda |
| Exhibit B: | The General Conditions - AIA Document A201/1997 Edition – As Modified |
| Exhibit C: | Underpinning Agreements |
| Exhibit D: | Guaranteed Maximum Price and Trade Payment Breakdowns |
| Exhibit E: | General Conditions Breakdown |
| Exhibit F: | Contractor's Application for the Payment and Cost Certification |
| Exhibit G: | Contractor's Personnel |
| Exhibit H: | The Project Progress Schedule |

MC000016256

# EXHIBIT 8

Exhibit H-1:    The Dollar and Manpowered Loaded Version of the Project Progress Schedule
Exhibit I:    The Stored Material Information Form
Exhibit J:    Intentionally Omitted
Exhibit K:    Partial and Final Release of Lien and Waiver of Claim Forms from Contractor and Subcontractors
Exhibit L:    Phase I Environmental Assessment
Exhibit M:    Site Plan
Exhibit N    Intentionally Omitted
Exhibit O:    Development Team Members List
Exhibit P:    Alternates
Exhibit Q:    Unit Prices
Exhibit R:    Project Lender
Exhibit S:    Contractor's Agreement with Project Lender
Exhibit T:    Completion Certificate
Exhibit U:    Equipment Value/Rental Rate Schedule and Equipment Log

To the extent that any of the foregoing Exhibits are not extant at the time this Agreement is executed, they shall be provided and approved in accordance with the Contract Documents; provided, however, that if no time is provided, they shall be promptly provided for approval by the Development Manager.

14.6.15 Contractor shall give the Development Manager a complete list of all Subcontractors, which shall be revised by Contractor regularly. Contractor, at the Development Manager's request and at any time or times, shall promptly make available to the Development Manager a copy of each executed Subcontract, and any changes, modifications or additions thereto within five (5) days of the execution thereof. In no event shall Contractor be entitled to submit a claim, nor shall the Contract Sum be increased, as a result of the failure of Contractor or any Subcontractor to perform its respective obligations under a Subcontract, or the bankruptcy or insolvency of, or cessation of business or non-performance by, a Subcontractor.

14.6.16 The Architect's Supplementary General Conditions contained in the Specifications (Exhibits A, A-1) shall be deemed to be supplements to the substantively corresponding (although in some instances differently numbered) provisions of the General Conditions (Exhibit B) or this Agreement. The General Conditions, AIA A201, as modified, shall be applicable to this Project, except to the extent they are overridden by this Agreement.

14.6.17 No member and/or partner, director, officer, employee affiliate or representative of Owner shall have any personal liability, in its or his individual capacity, or otherwise. Payment is subject to satisfactory performance of this Agreement.

14.6.18 In connection with the Work, Contractor certifies and covenants that it shall make a good faith effort to eliminate illegal drug use and alcohol and drug

MC000016257

# EXHIBIT 8

abuse from the Project Site during the term of this Agreement. Specifically, Contractor shall:

1. Prohibit the unlawful manufacture, distribution, dispensation, possession or use of drugs on Project Site;

2. Prohibit its employees from working under the influence of alcohol or drugs;

3. Not hire or assign to work anyone whom it knows, or in the exercise of due diligence should know, currently abuses alcohol or drugs and is not actively engaged in a bona fide rehabilitation program;

4. Promptly inform the appropriate law enforcement agency of every drug related crime that occurs on the Project Site if it or its employee has observed the violation or otherwise has reliable information that a violation has occurred; and

5. Notify employees that drug and alcohol abuse are banned on the Project Site, impose sanctions on employees who abuse drugs and alcohol on the Project Site, and institute steps to maintain a drug and alcohol free workplace.

## ARTICLE 15 - ENUMERATION OF CONTRACT DOCUMENTS

**15.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

15.1.1  The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A111-1997, as modified.

15.1.2  The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997, as modified herein as Exhibit B.

15.1.3  Other Conditions are reflected in Exhibit C.

15.1.4  The Drawings and Specifications are identified on Exhibits A and A-1.

15.1.5  The Addenda, if any, are as follows: Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 15.

15.1.6  Other Documents, if any, forming part of the Contract Documents are as follows:  All of the Exhibits to this Agreement identified in Article 14.6.14.

MC000016258

EXHIBIT 8

**ARTICLE 16 - INSURANCE AND BONDS.**

See General Conditions (Exhibit B) for insurance and bonding requirements.

This Agreement is entered into as of the day and year first written above and is executed in at least four original copies, of which one is to be delivered to Contractor, one to Owner, one to the Development Manager, and the remainder to the Project Lender.

OWNER                                                    CONTRACTOR

Madrigal Condominiums, LLC                Glen Construction Company, Inc.
c/o QDC Developments Services, L.L.C.

By: _____          By: _____
    Robert J. Knopf                                 William M. Sharabi
    Sr. Vice President                               Chief Executive Officer

42

MC000016259



# EXHIBIT 8

November 22, 2005

Mr. William M. Sharabi
Chief Executive Officer
Glen Construction Company
9055 Comprint Court
Gaithersburg, MD 20877

Madrigal - Correction to Exhibit B

Re:     Modified General Conditions of the Contract for Construction
        Article 11 Insurance and Bonds, 11.3 Performance Bond and Payment
        Bond, Paragraph 11.3.1

Dear Bill,

We hereby agree to amend Exhibit B, page 60 Paragraph 11.3.1 to the Modified Standard
Form of Agreement Between Owner and Contractor as follows:

> "Owner shall have the right to require the Contractor to furnish Bonds covering
> faithful payment and performance of the Contract and payment of obligations
> arising thereunder in the full penal amount of the contract (the Contract Sum), but
> not less then the GMP..."

A copy of the amended page 60 is enclosed for your convenience.
Please confirm your understanding and agreement of this language change.

QUADRANGLE DEVELOPMENT CORPORATION
WASHINGTON CENTER • 1001 G ST NW, STE 700W, WASHINGTON, DC 20001 • TEL (202) 393-1999

MC000016260

**EXHIBIT 8**

Mr. William M. Sharabi
November 22, 2005
Page 2

Should you have any questions please call at (202) 393-1999 x 2110.

Agreed:

OWNER                                                    CONTRACTOR

Madrigal Condominiums, LLC                  Glen Construction Company, Inc.
c/o QDC Developments Services, L.L.C.

By: _____              By: _____
    Robert J. Knopf                                     William M. Sharabi
    Vice President                                       Chief Executive Officer


CC:    Anthony Mugno, Bayerische Landesbank
       Raymond Bellwood, Inspection & Valuation International

MC000016261