EXHIBIT 13

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

```
------------------------X
MADRIGAL CONDO, LLC,      :   Docket No.: CA-8953-08
                          :
          PLAINTIFF.      :
                          :
                          :
          vs.             :
                          :
FOULGER-PRATT RESIDENTAL  :
CONTRACTING, LLC, et al,  :
                          :
          DEFENDANTS.     :   December 24, 2008
------------------------X   Washington, D.C.
```

The above-entitled action came on for a hearing before the Honorable CURTIS VON KANN, Senior Judge, in Courtroom Number JIC.

APPEARANCES:

On behalf of the Plaintiff:

DENNIS DAVISON, Esquire
McKenna Long & Aldridge, LLP
Washington, D.C.

On behalf of the Defendant:

KATHLEEN BARNES, Esquire

CHRISTOPHER BRASCOE, Esquire
Watt, Tieder, Hoffar & Fitzgerald, LLP
McLean, VA

VALARIE E. WILLIAMS                          08-46635
Official Court Transcriber        Telephone: 879-1757

EXHIBIT 13

1                    P R O C E E D I N G S

2          THE DEPUTY CLERK:  Your Honor calls civil action

3   8953-2008, Madrigal Condominiums LLC versus Foulger-Pratt

4   Residential Contracting LLC, at al.

5          Parties please identify yourselves for the record.

6          MR. DAVISON:  Good afternoon, Your Honor. I am

7   Dennis Davison, counsel for the Plaintiff.  And, with me is

8   Robert Knopf, K-n-o-p-f.

9          THE COURT:  Right.

10          MR. DAVISON:  On behalf of the owner.  And, in the

11   back over there, Associate Amy Falls and my paralegal

12   Craig Everly.

13          THE COURT:  Okay.  And, on the other side?

14          MS. BARNES:  I'm Kathleen Barnes for the Defendant.

15          THE COURT:  Um-hmm.

16          MS. BARNES:  And, I am counselor in D.C., and I am

17   here with my partner, Christopher Brascoe.

18          THE COURT:  Okay.

19          MS. BARNES:  I'd like to move his admission *Pro hac*

20   to make the argument today.

21          THE COURT:  Okay.  Any objection?

22          MR. DAVISON:  No.  Of course not, Your Honor. Thank

23   you.

24          THE COURT:  Granted.

25          MR. BRASCOE:  Thank you, Your Honor.

1          THE COURT:  Can you give me the spelling of the

2   name of your affiant?  I read the affidavit, Kevin B.

3   something.  It's a little hard to read.

4          MR. BRASCOE:  MacClary?

5          THE COURT:  Okay.  How's that --

6          MR. BRASCOE:  M-a.

7          THE COURT:  M-a.

8          MR. BRASCOE:  C-l-a-r-y.

9          THE COURT: We got two C's?

10          MR. BRASCOE:  Two C's.

11          THE COURT:  Is it M-a-c and then a Capitol C?

12          MR. BRASCOE:  Yes.

13          THE COURT:  C-l-a-r-y?

14          MR. BRASCOE:  Yes, sir.

15          THE COURT:  Okay.  I can -- I can do that.  Good.

16   Okay.

17          Well, let me say that a couple of things that may

18   speed us up a bit.  I've looked over the papers to some

19   extent.  This matter came in on kind of short notice; on

20   Christmas Eve.  And -- so, I certainly have not read every

21   single piece of paper.  I have read the two affidavits.  The

22   affidavit of Mr. Knopf.  The affidavit of Mr. MacClary.  And,

23   I've looked at bit at the modified standard form of agreement

24   between owner and contractor.  So, I have a bit of, I think,

25   understanding of what is involved.

1         It is evidenced to me that this is a multifaceted
2    dispute with lot of wonderful roads to pursue and to sort out
3    at some point, but it ain't today.  There will be a
4    preliminary injunction hearing -- I don't know -- do we have
5    a date yet?

6         THE DEPUTY CLERK:  I'll look that up right now,
7    Judge.

8         THE COURT:  Probably in January.  We'll find out
9    soon.  And, there will probably be a lot of things that the
10   parties may want to explore and put on witnesses and
11   documents and so forth.  We're focused today, not on trying
12   to make determinations about every aspect of it, but simply
13   to determine whether the petitioner's request for a TRO
14   should be granted.

15        Let me ask a couple of questions that will expedite
16   this for me, anyway.  And, I'll ask Mr. Davison first, and,
17   then, you all can respond.

18        What is the dispute resolution mechanism this
19   contract?  Is there a provision for arbitration?

20        MR. DAVISON:  Yes.

21        THE COURT:  Okay.

22        MR. DAVISON:  The dispute mechanism is found in the
23   contract --

24        THE COURT:  Frankly I skimmed it --

25        MR. DAVISON:  -- at --

```
 1              THE COURT:  -- and I didn't see it immediately.
 2              MR. DAVISON:  Yes.  Because it's in the general
 3   conditions --
 4              THE COURT:  Okay.
 5              MR. DAVISON:  -- Your Honor.
 6              THE COURT:  Yeah.
 7              MR. DAVISON:  If you go to --
 8              THE COURT:  Well, I just turned to something says
 9   Resolution of Claims and Disputes on Page 34.  Is that it?
10              MR. DAVISON:  You're faster than I am.
11              THE COURT:  No.  I'm just lucky.
12              MR. DAVISON:  Yes.
13              THE COURT:  That's it.
14              MR. DAVISON:  That is exactly right.  And, the
15   procedure, if I can just sum it up for you --
16              THE COURT:  Uh-huh.
17              MR. DAVISON:  -- is a -- first the -- a dispute
18   that the contractor has a claim that it's to be submitted to
19   the architect for an initial decision.
20              THE COURT:  Okay.
21              MR. DAVISON:  Then, there's mediation to be
22   followed by the private arbitration procedure, which has both
23   an expedited process for claims of under a hundred-thousand
24   dollars.  And, for a longer, but not very long, process for
25   arbitration.
```

1          THE COURT:  Okay.

2          MR. DAVISON:  With private parties selected as the

3   arbitrator.

4          THE COURT: And where is that --

5          MR. DAVISON:  That's -- that's --

6          THE COURT:  I see mediation here.  Okay.

7          MR. DAVISON:  Okay.  If you look at 4.4.1 and you

8   read -- on Page 34.

9          THE COURT:  Okay.

10          MR. DAVISON:  Okay?

11          THE COURT:  Yeah.

12          MR. DAVISON:  For disputes, if you look down the

13   middle of the page --

14          THE COURT:  Right.

15          MR. DAVISON:  -- of selecting single arbitrator

16   who's knowledgeable --

17          THE COURT:  Okay.

18          MR. DAVISON:  -- reputable and knowledgeable.

19          THE COURT:  Um-hmm.

20          MR. DAVISON:  And there's a very rapid

21   determination process.

22          THE COURT:  Five days.  Well -- okay.  That's

23   following mediation?

24          MR. DAVISON:  That's following mediation.  But,

25   also, following submission to the architect.

1          THE COURT:  Right.  Okay.

2          MR. DAVISON:  Okay.  And, this doesn't apply to an

3    application for a temporary restraining order where a lien

4    has been filed on the property.

5          THE COURT:  I saw that.

6          MR. DAVISON:  Okay.  And, ahh --

7          THE COURT:  Okay.  So, there -- thank you for

8    directing me.  I short of flipped through the main contract

9    and didn't find this.  So, that explains why.

10         (Pause.)

11         THE COURT:  Okay.  I'm just skimming -- this is

12   Page 37; this seems to have the arbitration provisions, and

13   I'm noting that the original -- I guess Paragraph 5.6.2,

14   which refer to the applicable rules being the Triple A

15   Construction industry rules, have been deleted.  And, I don't

16   see any new provision for the -- what rules will apply.

17   But, parties can hopefully come to an agreement about that.

18         MR. DAVISON:  Under the private arbitration

19   provision under 4.4.1 --

20         THE COURT:  Okay.

21         MR. DAVISON:  -- going back --

22         THE COURT:  4.4.1 -- yeah, okay.

23         MR. DAVISON:  Okay.  It does provide that the

24   parties in the arbitration shall be entitled to pre-hearing

25   Discovery --

1          THE COURT:  Right.  I saw that.

2          MR. DAVISON:  -- and, ahh -- according to the

3   Federal Rules of Civil Procedure --

4          THE COURT:  Yeah.

5          MR. DAVISON:  Okay.  So, the arbitrators are

6   entitled to --

7          THE COURT:  The Discovery part would be under the

8   Federal Rules --

9          MR. DAVISON:  Right.

10          THE COURT:  Usually there's a preference to the

11  arbitration rules that would govern the hearing, and the

12  rendering of the award and so forth.  But, anyway, that's --

13  that's okay.  I now sort of understand.

14          Let me -- because I'm sort of -- I'm sort of press

15  for a little bit of time here today, let me just zero right

16  in on what seems to me the crucial issue.  And, Mr. Brascoe,

17  I'll direct this to you.

18          I've read Mr. MacClary's affidavit, and I

19  understand that it's the view of Foulger-Pratt that the owner

20  here and the develop manager have breached various provisions

21  and haven't responded promptly to request for payment and

22  haven't come to meetings and haven't done a number of things

23  that you feel are -- they should have done.

24          And, in Paragraph 39 of that affidavit, there sort

25  of summed up -- that's sort of a summation of what has been

1    alleged in more detail before.

2           My question to you is, where in the contract

3    between the parties do any of the items in Paragraph 39

4    excuse you from the prohibition on the filing of mechanic's

5    lien contained in 14.6.1?

6           MR. BRASCOE:  Thank you, Your Honor.

7           First of all, some of the payment provisions are

8    directly entitled -- for instance, 9.5.1, says, "decisions to

9    withhold certification."

10          THE COURT:  Right.

11          MR. BRASCOE:  So, that whole certification is

12   bounded up in the payment process.

13          THE COURT:  Right.

14          MR. BRASCOE:  As you will note earliest progress

15   payments that are not dealt with in the Plaintiff's papers,

16   where even approved by the architect, Foulger-Pratt worked

17   for over a year without a single penny.  Without a single

18   penny.  So --

19          THE COURT:  Let me -- let me see if I can save

20   time.  If I were for the moment to assume that everything set

21   forth in Mr. MacClary's affidavit is true, I'm quite

22   confident that the disputes about a lot of it.  But, assuming

23   arguendo, every single bit of it was true, who do you get

24   around 14.6.1?

25          MR. BRASCOE:  Well, it's an (indiscernible) a

EXHIBIT 13

1    principle of law that if a party -- if a party causes a

2    failure of a condition that would fix its own liability, it

3    is not allowed to rely on that particular failure in order to

4    exculpate itself from liability.

5           Here, they were in complete control of the notion

6    to certify.  That was the condition prior to allowance of the

7    liens specifically allowed by contract.

8           They caused the failure of that condition.  Then,

9    as a matter of basic law -- in contracts, you can't cause the

10   failure of a condition and then rely on that same failure --

11   well, I have a right to make it happen; it didn't happen, so

12   I'm exculpated.  It's indefensible under law.

13          So, if we can prove, as I'm certain though we can

14   under a full hearing of the merits, that the matters in our

15   affidavit is true, that the decision to certify was

16   wrongfully withheld, you cannot, then, rely on that same

17   failure to prohibit a statutory right that we otherwise would

18   have.

19          THE COURT:  Well, that's an interesting argument.

20   Any response, Mr. Davison?

21          MR. DAVISON:  Yes.  I think that it follows that if

22   the contractor's not performing in meeting its obligations

23   under the contract, it cannot get around 14.6.1 simply by

24   saying to the owner, well, you haven't complied, and,

25   therefore, I don't have to follow the prohibition against

EXHIBIT 13

1    filing the lien.

2           There is a procedure in the contract for a dispute

3    if there is a dispute by the contractor.  There is a very

4    expedited process for dealing with that. So, that if there

5    was a dispute with respect to application for payment, Number

6    twenty --

7           THE COURT:  Seven, 28, 29 --

8           MR. DAVISON:  -- seven, for fifty thousand dollars,

9    that could have decided in five days.

10          But, there has been no submission of a dispute

11   claim to the arbitrator. There has been no mediation.

12   There's been no demand for arbitration in any of these

13   situations.

14          Furthermore, in the District of Columbia, there are

15   cases on point on this that a party cannot breach the

16   contract, claim that the other party's in breach, and claim

17   the benefits of the contract without -- there's been no

18   rescission of the contract.

19          So, here I don't think there is a way to get around

20   14.6.1.  The whole purpose of that, putting it in the

21   contract, was to prevent this very situation.  The contractor

22   has remedies under the contract and hasn't availed itself of

23   it.  And --

24          MR. BRASCOE:  Your Honor, I would --

25          MR. DAVISON:  -- now, we're faced with a situation

1    -- and, I don't know, Your Honor, if you've looked at our

2    motion for temporary restraining order, --

3              THE COURT:  I have.

4              MR. DAVISON:  -- but there are some --

5              THE COURT:  Um-hmm, Um-hmm.  (Indiscernible)

6    closings to start Friday, and I guess into next week.  And --

7    so on.

8              MR. DAVISON:  Right.  And, these people are going

9    to be put to a problem that I don't think this Court can

10   undo.  I mean, they're ready to move out of their homes into

11   these condominium units.  The closings are set.  And, I

12   understand that this contractor is not licensed in the

13   District of Columbia.  Doesn't have a license -- doesn't have

14   a good standing certificate.  The lien is invalid.

15             But, beyond that, you know, we're prepared to go to

16   arbitration, or mediation, or et cetera, on these disputes.

17   As Your Honor is absolutely right, we take a different view -

18   -

19             THE COURT:  What is --

20             MR. DAVISON:  -- on all of these issues.

21             THE COURT:  The Foulger-Pratt submission,

22   particularly, I guess, the MacClary affidavit, alleges as I

23   remember it basically, that they've worked for, I don't know

24   what, a year?

25             MR. BRASCOE:  Over a year, Your Honor.

1          THE COURT:  A substantial period of time with

2   virtually no payment.

3          MR. BRASCOE:  No Payment. Zero.

4          THE COURT:  And, that quite a -- quite a balance

5   has been built-up.  What is the general answer of Madrigal to

6   that?

7          MR. DAVISON:  Okay.  The answer, first of all, is

8   that application for Payment 26, which was not submitted by

9   the contractor, okay, for seven -- approximately seven

10  hundred and fifty thousand dollars, was paid by the owner in

11  March of this year.

12         THE COURT:  Right.

13         MR. DAVISON:  And there -- a dispute arose over the

14  liens -- excuse me.  The lien releases, I should say, of the

15  subcontractors.  And, I can swear Mr. Knopf if you'd like and

16  he can testify --

17         THE COURT:  No.  Not yet.

18         MR. DAVISON:  -- to this.  But, we were notified by

19  subcontractors that applications for payment previously by

20  Glenn Construction Company that had gone under, they had

21  requisition payment, payment had been made, and that those

22  funds hadn't gone to the subcontractor. So, two of the

23  subcontractors filed liens on the project, which have been

24  removed.

25            But, the concern --

EXHIBIT 13

```
 1              THE COURT:  So, is it -- is it --

 2              MR. DAVISON:  -- has been --

 3              THE COURT:  -- correct that Madrigal has paid about

 4   three-quarters of a million to -- to Foulger-Pratt?

 5              MR. DAVISON:  Yes.

 6              UNIDENTIFIED MALE:  In March.

 7              MR. DAVISON:  In March.

 8              THE COURT:  In March.  And, then -- and, then,

 9   they're asserting, I think, another 2.3 million is owed;

10   something on that order?

11              MR. DAVISON:  Well -- well --

12              UNIDENTIFIED MALE:  Correct.

13              MR. DAVISON:  -- yes.  And, that is --

14              MR. BRASCOE:  Your Honor, I would -- I would

15   contest --

16              MR. DAVISON:  -- totally erroneous because --

17              MR. BRASCOE:  -- the notion that Foulger-Pratt --

18              THE COURT:  I'll get you -- give you chance.

19              MR. BRASCOE:  Okay.

20              MR. DAVISON:  The applications for payment here,

21   which are part of this affidavit, that the only one that was

22   certified and then withdrawn was for fifty-one thousand two

23   hundred and ten dollars.  Again, there were no --

24              THE COURT:  Certified by the architects?

25              MR. DAVISON:  Yes.  As you can see at the bottom.
```

EXHIBIT 13

```
 1                    THE COURT:  Right.  Right.  Um-hmm.  Right.
 2                    MR. DAVISON:  Application for Payment Number 28 was
 3       not certified by the architect.  Neither was -- which was
 4       only for two hundred ninety-six thousand dollars.  And, then,
 5       application for Payment 29, which seeks the entire retainage
 6       under the contract.
 7                    THE COURT:  Um-hmm.  What's that add up to about?
 8                    MR. DAVISON:  That is 2.288 million.
 9                    THE COURT:  Okay.
10                    MR. DAVISON:  Okay.
11                    THE COURT:  All right.
12                    MR. DAVISON:  And, that is not due until final
13       payment.  And, this application for Payment Number 29 came in
14       -- (Pause.) -- It's October 8$^{th}$.  It came in sometime in
15       October.
16                    THE COURT:  Um-hmm.
17                    MR. DAVISON:  So, then, Mr. Brungard (phonetic
18       sp.), the contractor, commented back that -- and, we have
19       these -- this correspondence here, that they had to have
20       these liens -- releases, because the bank wouldn't approve
21       funding absent these lien releases.  So, we asked for these
22       lien releases to be provided.
23                    We met in October and asked for them.  We were told
24       by Mr. Brascoe that they'd be forthcoming.  We have not
25       received one.  We were, then, told that they weren't going to
```

EXHIBIT 13

1    give them to us, and they were going to hold them over our

2    heads unless we agree to pay them the 2.8 million -- or 2.28

3    million. Which it's a chicken and egg situation, Your Honor,

4    because the bank is -- has refused to agree to any payment or

5    even to talk to us absent getting these lien releases.  And,

6    I have two letters here, Your Honor, that I'd like to submit

7    to you.

8            THE COURT:  Are these from the bank?

9            MR. DAVISON: No. These are from me.  I have -- I

10   sent Mr. Brascoe the e-mail from the bank.  But, here's my

11   demand of yesterday to remove the lien.

12           THE COURT:  Okay.  I think we're getting deeper

13   into evidence than I want to get. But, I understand your

14   position.  Give you an opportunity to respond to anything

15   that was said thus far.

16           MR. BRASCOE:  Well, yeah.  I mean, it's scattergun.

17   And, one thing it does show is the wisdom of Your Honor by

18   starting out by saying that this would be completely

19   circular.

20           It is manifest that they cannot cause a condition

21   to fail then rely upon that failure as an exculpation.  And,

22   that's exactly what they're trying to do here. We need a

23   trial on the merits to find out if they wrongly withheld that

24   decision.  I could take it apart bit-by-bit, but here's the

25   architect certification on the second payment application.

1        There was never -- there was never a payment for --

2    submitted by Foulger-Pratt that was paid.  You want to know

3    why, Your Honor?  Because, then, they had Travelers and the

4    consent agreement, and they were using them as a bank for 68

5    million dollars.  Five million dollars in excess of the GM

6    under project.  They found themselves a new bank in this bad

7    economy; it's been Travelers.

8        We've been ducked out meetings with the bank.  You

9    don't hear a comment -- you're hearing about lien releases.

10   We offered a substitute instrument to hold them harmless from

11   all problems with regards to all liens.  Travelers already

12   pledge them the consent.  There's a payment bond out there.

13       They've ducked us on meetings with the bank.  They

14   wouldn't present or hold harmless.  Their payers are silent

15   on it.  Their papers has misrepresentations of the law. We

16   need a hearing on the merits.  It is a 3 million dollar

17   action, and they are trying to rely on papers that we got at

18   one o'clock this afternoon to -- to bungle things up.

19       I assure you, Your Honor, that if given the

20   opportunity clarity will show that we have been wronged here.

21   Wronged here severely.  And, this is a case about someone

22   taking a risk in a bad economy on a condominium project and

23   trying to shoulder that on my client's back.

24       There was no adequate assurances that money would

25   be forthcoming from the bank.  The letter from the bank was

EXHIBIT 13

```
 1    littered with other obligations, conditions, loan agreements.
 2    This is a situation where we were left with no choice after a
 3    year of invoices and trying to work with these people of not
 4    a penny being paid, where we had a right to avail ourselves
 5    to the alternative remedy.  There's an alternative remedy.
 6              Contract didn't say no lien.  It says, you can
 7    lien.  You can lien when there's a proper payment.  You can
 8    lien with there's a certification.  I can't withhold the
 9    certification --
10              THE COURT:  Where -- where's that provision?
11              MR. DAVISON:  Where's that?
12              MR. BRASCOE:  Well, it's -- it's --
13              THE COURT:  Is it provision in the contract --
14              MR. BRASCOE:  It's the converse of the same
15    provision, Your Honor.  When they say, only if I certify.
16    That's not a magical talisman that they get to waive whether
17    they're right or wrong or indifferent and completely in
18    breach of the contract.
19              That is only to be applied -- like I said, they
20    can't cause that failure and then rely upon the cause.
21              THE COURT:  Did you ever invoke the Dispute
22    Resolution Provision?
23              MR. BRASCOE:  That has not been invoked, yet.  But
24    that --
25              THE COURT:  By either side?
```

```
 1              MR. BRASCOE:  No.  But, it's in the -- it's an
 2  alternative remedy, the lien remedy, and it's ineffective.  I
 3  don't want to a judgment against these people who don't have
 4  any money.
 5              THE COURT:  Is there any other proceeding
 6  outstanding at the moment beside this case?
 7              MR. BRASCOE:  No.  It just began this afternoon.
 8              THE COURT:  Okay.  Okay.  Well, I tell you what --
 9              MR. BRASCOE:  Oh -- Your Honor, one point --
10              THE COURT:  Um-hmm.
11              MR. BRASCOE:  -- my co-counsel raises.  The
12  licensure issue is also a -- a attempt to -- if you look to
13  the same statute, Section (b) of the same statute, talks
14  about circumstances were incorporated in another jurisdiction
15  and how you can do it.
16              Anybody familiar with submitting liens in the
17  District of Columbia knows that they do not allow a lien
18  without all the showings of certificates of good standing.
19              THE COURT:  Okay.  I have heard enough and I am
20  going to rule.  And, the ruling is as follows.  Do we have a
21  date for the PI hearing?
22              THE DEPUTY CLERK:  Sure.  January 9th.
23              THE COURT:  January 9th.  Just around the corner.
24              Okay.  On January 9th, some poor devil is going to
25  spend hours or days trying to sort this out.  And, it will be
```

1   an interesting proceeding.  And, I wish you both well.  I

2   don't know how it will turn out.  There're, obviously, are a

3   lot of claims and counterclaims and issues and disputes.

4   And, it will take, I think, quit a while to sort out what --

5   what the truth is.  And, who wronged whom and so forth.

6           I am confronted only at the moment with a request

7   by the Plaintiff that there be a temporary restraining order

8   issued with respect to a mechanic lien that was recorded in

9   the Recorder of Deeds Office by Foulger-Pratt.

10          And, in that regard I note that a right to file a

11  mechanic's lien is a statutory provision in this -- in the

12  District of Columbia and many others.  However, the parties

13  to a construction contract can agree to modify that remedy to

14  the extent they wish to.  There's no issue here to my

15  knowledge about unconscionability of any of these contract

16  provisions.

17          These are two large entities I'm sure represented

18  by counsel throughout.  They have a very detailed single-

19  paged contract of forty or some odd pages with dozens of

20  exhibits and schedules.  These are big boys who worked out a

21  contract in a big construction project.

22          Paragraph 14.6.1 of that contract is, in my view,

23  extremely explicit.  Says, "Contractor agrees that in no

24  event shall contractor at anytime file a lien of any kind

25  against the property.  Contractor only shall be entitled to

1   file liens only for amounts certified for payment by the
2   development manager and architect, and which remain unpaid by
3   the owner to the contractor for periods in excess of those
4   specified in this agreement."

5         Goes on to say a little bit later, "The parties
6   agree that violation of this provision by the contractor will
7   cause owner to suffer irreparable harm for which it will have
8   no adequate remedy at law.  Accordingly, the parties agree
9   that this provision shall be specifically enforceable by
10  owner who shall be entitled to seek preliminary and/or
11  permanent injunctive relief to remove said lien."

12        This is quite explicit and strongly worded
13  provision.  It does not say as some provisions of this sort
14  do, that such certifications are not to be unreasonably
15  withheld by the development manager or the architect.
16  Doesn't contain that provision.

17        It's quite absolute that the only circumstance
18  under which the contractor is entitled to file a mechanic's
19  lien is one in which we have a certified payment certified by
20  the development manager and the architect, and it remains
21  unpaid by the owner past a -- the periods specified in the
22  agreement.

23        There is no evidence before me that any such
24  payment is outstanding.  That we have some payments certified
25  by the architect, but not the development manager in question

1  here.  None certified by both.  So, the provision -- the

2  exception to the provision in 14.6.1 has not been met.

3          I have found no provision in the contract which

4  entitles the contractor to file a mechanic lien when the

5  development manager and/or architect allegedly improperly

6  failed to certify payment.  And, I think there is -- there

7  will be a serious dispute at the preliminary injunction

8  hearing, first, about whether the development manager did

9  improperly fail to certify payment.  There will be a huge

10 battle about that.

11          And, even if it is found that they did, it's not at

12 all clear to me that that does entitle the contractor to file

13 a mechanic's lien.  I understand the argument of the

14 contractor here that the owner can't completely defeat the

15 contractor's right to payment by, in effect, creating the

16 condition that excludes the filing of a mechanic's lien;

17 improperly creating that condition.

18          That may or may not be the law.  I'm not entirely

19 sure it will turn out to be the case. Particularly in a

20 situation in which the provision of the contract against

21 mechanic liens is very express and very strong.

22          There are other remedies provided in this contract

23 to the contractor. Including the remedy in Section 9.7.1 to

24 stop work after providing the required written notice.  There

25 is a dispute resolution mechanism as we have talked about,

1  which either party is entitled to invoke.  It hasn't been

2  invoked here.

3        And, I think it's -- and, there may even be a

4  circumstance, I'm not sure whether there is, I haven't been

5  through this contract in excruciating detail, under which the

6  contractor may have a right to seek a TRO or a preliminary

7  injunction of its own.  I don't know whether that -- any part

8  of this contract can be so read.

9        But, there are remedies available to the

10  contractor, but this is not one of them.  In fact, this is

11  one that is quite explicitly denied to the contractor.  And,

12  I don't believe it can be properly -- I do not believe the

13  contractor has demonstrated any entitlement to file a

14  mechanic's lien in question.

15        So, I'm going to grant the temporary restraining

16  order and preclude the filing of any mechanic's lien until

17  the preliminary injunction hearing on January 9th, which is,

18  I guess, about a couple of weeks away.

19        The mechanic's lien that has been filed, Instrument

20  2008127096, is now in place in the Recorder of Deeds office.

21  And, in theory, the Plaintiff here seeks a mandatory

22  injunction directing to have me direct Foulger-Pratt to

23  withdraw that mechanic's lien.

24        Given that it is 3:00 p.m. on Christmas Eve, I'm

25  not at all confident that can even be done at this hour.

EXHIBIT 13

1   Whether the Recorder of Deeds Office is closed up early as

2   everybody else in the City has, I don't know.

3           The simpler solution to that, I believe, is for me

4   to simply declare that mechanic's lien null and void.  And,

5   there's no need for anybody to rush over to the Recorder of

6   Deeds Office and try to slip something under the door to

7   withdraw it.

8           So, that's what I'm gonna do.  And, I'm, also,

9   going to enjoin Foulger-Pratt from filing any further

10  mechanic's liens concerning the Madrigal -- until such time

11  as the Court has heard and decided the Plaintiff's motion for

12  preliminary injunction.

13          I do think this is a case in which the -- first of

14  all, 14.6.1 reflects an agreement by the parties that a

15  violation of that provision would cause irreparable harm.

16  But, beyond that, I think there is substantial likelihood

17  that the Plaintiff would be able to prevail on a showing that

18  if all of these sales fall through, there will be substantial

19  harm.  Perhaps irreparable harm.  If could in theory be

20  compensated for by damages if -- if the Plaintiff loses huge

21  amounts of money because of the sales.  In theory they could

22  recover that from Defendant by way of a damage claim.

23          But, it's not at all clear to me that the project

24  would survive.  I don't have evidence before me as to the

25  financial condition of Foulger-Pratt.  And, Travelers, I

EXHIBIT 13

1  presume is sound.  So, it may or may not be that the at the

2  preliminary injunction hearing, the Court will conclude the

3  damages is an adequate remedy.

4       But, we are dealing with real estate.  There's a

5  strong body of law in the District of Columbia that real

6  estate is unique and special.  And, that the interference of

7  the ability to transfer real estate is irreparable.  That'll

8  be something for you all to brief.  I think the Plaintiff has

9  a substantial chance of prevailing.

10       Now, I would say one other thing, which is I would

11  strongly recommend that between now and January 9th, the

12  parties sit down, either directly or with a mediator, and try

13  to work this out.  It would be in everybody's interest to

14  find a solution.  I certainly can't tell sitting here at the

15  moment what that solution is.  It would seem to me that --

16  frankly, the problem that has been presented does not sound

17  so terribly insuperable to me.

18       If the issue is whether or not some of these prior

19  subcontractors are going to assert liens and otherwise

20  interfere with the project, I would think that that could be

21  run down fairly quickly.  It could be established.

22       The request for payment should be processed

23  promptly in a good faith basis.  Based upon whatever the

24  contractor did or didn't do, the contractor out to get paid,

25  and the project ought to go forward and be completed as

1  expeditiously as possible so that a stream of income can come

2  in for everybody's benefit; the owners and the contractor.

3       And, I would have thought that with a little

4  serious good faith bargaining and negotiation, and perhaps

5  the guidance of a mediator, you all could work out that kind

6  of an arrangement fairly readily.

7       I realize that Foulger-Pratt claims that it tried

8  to do that, set up some meetings, and that the Plaintiff

9  didn't show.  I suspect the Plaintiff would tell me that it

10  had all kinds of good reasons for not showing, and we'd spend

11  another hour talking about that.

12       But, I think it would be highly desirable for the

13  parties to invoke the Dispute Resolution Provision.  Seems to

14  me that Foulger-Pratt can do that today, if they want to.  It

15  does have to go through the architect, and just how quickly

16  he or she can respond, I don't know.  But, presumably pretty

17  quickly.  And, I would think you could have a mediation

18  within the time between now and the preliminary injunction.

19  And, if that fails, go on to arbitration.

20       But -- so, there're many, many different dimensions

21  to this.  And, I don't purport to know how they will all turn

22  out.  But, I think the one thing that's pretty clear to me is

23  that 14.6.1 presents an unassailable obstacle to the Foulger-

24  Pratt mechanic lien at this point.  And, I'm going to strike

25  it.

EXHIBIT 13

```
 1              MR. BRASCOE:  Your Honor, may -- may I interject?
 2              THE COURT:  Yeah.
 3              MR. BRASCOE:  I can give you a citation of
 4    principles of law where you cannot cause the frustration or
 5    condition and rely on that same condition as an exculpation.
 6              THE COURT:  Well, that depends on the assumptions
 7    they did it improperly.  They claim they did it properly.
 8              MR. BRASCOE:  Right.  And, that's what --
 9              THE COURT:  And, we're not gonna be able to find
10    that out today.
11              MR. BRASCOE:  Right.  But, what you're doing, Your
12    Honor, is -- what you're doing is you're irreparably harming
13    Travelers and Foulger-Pratt, because there's no -- as in
14    their own affidavit there's no funds that this company has
15    that would make them amenable to judgment.  That's why this
16    alternative remedy is so important.  The TRO statute --
17              THE COURT:  They tried to get some funds on Friday.
18              MR. BRASCOE:  Well -- but, they're trying to get
19    funds --
20              THE COURT:  And, next week.
21              MR. BRASCOE:  They're not -- they're not putting
22    them in escrow, Your Honor, for us.  They're gonna give them
23    back to the bank that they owe.
24              The TRO statute requires of it's -- security be
25    entered.  If it turns out that they're right, then -- then
```

EXHIBIT 13

```
 1   fine.   Then we pay for that security.   But, they need to put
 2   up a bond because they're arguing time bars on the lien.   You
 3   remove this lien and prevent me from re-filing it, you may
 4   take away that statutory right I could be proven correct on
 5   the briefs and left with not remedy.
 6            They should at least under the TRO statute be
 7   required to post a bond for the amount of the lien.   And,
 8   then, if we're wrong we pay for it.
 9            THE COURT:   Um-hmm.   Well, on the declaration that
10   they're null and void that can be reversed at the preliminary
11   injunction hearing.   If the preliminary injunction is denied
12   a Court can declare that provision void *nunc pro tunc*, and
13   that'll be reinstated as of the date they were filed.
14            So, you're not going to lose any of your rights
15   there.
16            With respect to a bond, sometimes a bond is
17   required in a case of a TRO.   What's the Plaintiff's position
18   about that?
19            MR. DAVISON:   There is several cases if I -- if
20   you'd like me to get them, but in the situation here only a
21   nominal bond is required.
22            THE COURT:   Why would that be?
23            MR. DAVISON:   Because here the harm to the
24   contractor is not having its lien sit there for the next two
25   weeks. There's no harm, whatsoever.   As Your Honor has just
```

EXHIBIT 13

```
 1   said, that decision can be reversed at the preliminary
 2   injunction hearing.
 3              There's no actual harm.  They -- they have a --
 4              THE COURT:  What -- from your point of view --
 5              MR. DAVISON:  -- hundred and eighty --
 6              THE COURT:  -- what is the harm between today and
 7   January 9th?
 8              MR. BRASCOE:  The harm between today and January
 9   9th is having adequate security for payment if it turns out
10   that we're correct --
11              THE COURT:  Well, you didn't have it yesterday.
12   You mean, whatever bonds you had, you had.  This has been
13   going on for a year.  You've never --
14              MR. BRASCOE:  Right.
15              THE COURT:  -- invoked dispute resolution.
16              MR. BRASCOE:  As the -- as the lien filed -- as all
17   of the different units get sold, the remedy become harder and
18   harder to force the lien.  This was a right that was not
19   specifically waived under the contract.  It didn't say
20   there'd be no liens.  They put a condition on how liens would
21   be -- you'd have a right.
22              THE COURT:  But, you accepted it.  Or your
23   predecessor accepted it.
24              MR. BRASCOE:  Yeah.  But, you do it under the
25   principles of law.  And, the principle of law is you cannot
```

EXHIBIT 13

1    cause the frustration of something to happen, and then rely

2    on its failure to happen to exculpate yourself.

3              THE COURT:  Well, you -- there may be -- there may

4    be a basis -- I mean, I'm familiar with that general

5    principle.  Whether it applies here will probably merit some

6    briefing.  But, that -- you're proceeding from the assumption

7    that they did that improperly.

8              MR. BRASCOE:  Right.

9              THE COURT:  They feel strongly that they did not.

10             MR. BRASCOE:  But, that's a hearing --

11             THE COURT:  They have grounds for it.

12             MR. BRASCOE:  -- on the merits, Your Honor.

13             THE COURT:  Correct.  Correct.

14             MR. BRASCOE:  I'm sorry.  I'm turning this off,

15   now.

16             THE COURT:  Yeah.  Okay.

17             MS. BARNES:  If I might -- if I might just say --

18             MR. DAVISON:  May I -- may I just interject?

19             THE COURT:  Yes, ma'am.

20             MS. BARNES:  If I might just say that the problem

21   is that, you know, when you talk about what is the harm,

22   unfortunately the harm is something that we don't know.  We

23   filed the lien in order to ensure that there was security.

24   Because the contracts specifically states that we are

25   entitled to assurances and security, and we have not been

1   assurances and security.

2          What we were told about the loan that they have

3   with regard to this construction is that it is a loan that

4   also must pay several other things, including their operation

5   expenses.  And, so, that loan everyday gets drawn down.  And,

6   even as they take money that they have for the sale of these

7   properties, they send it back to the bank.  They don't put it

8   in escrow for us.

9          And, so, what we are saying, only, is that for the

10  nine days or for however long it takes for the judge to

11  determine the preliminary injunction, that a bond in the

12  total amount of the lien, which would be a small charge right

13  now to the Plaintiff, in which we would pay back, is the only

14  thing that allows this Court to make sure that the balance of

15  the harm is that there's no harm to anyone.

16         If you're finding irreparable harm only based on

17  the fact that the contract says, and that they claim that

18  there are people who are trying to close, we, also, have made

19  such claims of irreparable harm if this money goes away we're

20  not entitled to get it.

21         And, so, the only way to ensure --

22         THE COURT:  What -- what money goes away?

23         MS. BARNES:  The money that's allegedly in the loan

24  that we've been told.  As it, also, goes for operating

25  expenses and other things that they have for a daily basis.

EXHIBIT 13

```
 1              And, so, what we are asking is simply that -- and,
 2   this is, also, what the mechanic's lien statute allows for.
 3   Is that there be a bond in the total amount of the lien.
 4   And, if that bond is not necessary when the Court decides on
 5   January 9th, we'll pay for the bond.  But, then, there will
 6   be no possibility of harm to either side.
 7              MR. BRASCOE:  It's the only way to preserve
 8   fairness without trying this now, Your Honor.
 9              THE COURT:  What is the -- how many units are
10   supposed to be sold in the next -- between now and January
11   9th?
12              MR. DAVISON:  Four.
13              THE COURT:  Four.
14              UNIDENTIFIED MALE:  Four through the end -- four
15   through the end of the year, and then we have some additional
16   units.
17              THE COURT:  In January?
18              MR. DAVISON:  In January.
19              THE COURT:  About how many was that you expect?
20              UNIDENTIFIED MALE:  Less than five.
21              THE COURT:  So, we're talking about eight or nine
22   units --
23              UNIDENTIFIED MALE:  If I had to guess.
24              THE COURT:  -- over the next -- and, and what is
25   the -- what is the sale price or the range or the prices on
```

1   these?

2            UNIDENTIFIED MALE:  They're about four hundred-

3   thousand average.

4            THE COURT:  Okay. And, those are scheduled to go to

5   settlement in this next period of time?

6            MR. DAVISON:  That's correct.

7            THE COURT:  Um-hmm.

8            UNIDENTIFIED MALE:  I might add, Your Honor, that

9   in the total project there are a hundred and thirty unsold

10  units today.  And, that the loan balance, (indiscernible)

11  loan balance, is eighteen million dollars.

12           So, the loan balance is easily paid off out of the

13  remaining units that are left.  And, there is certainly

14  adequate funds remaining in the loan to fund the construction

15  if and when the contractor ever performs the obligations that

16  he's supposed to under the contract to get final payment.

17           THE COURT:  So, what is the --

18           MS. BARNES:  What we were told --

19           THE COURT:  Is the eighteen million a drawdown that

20  you have from the lender?

21           UNIDENTIFIED MALE:  It was original sixty-five

22  million.  That loan has been paid down through sales and is

23  now down to eighteen million.

24           MR. BRASCOE:  That's what he owes, Your Honor.  Not

25  what is available for us.

EXHIBIT 13

1           MS. BARNES:  What we were told is less than four

2    million is available for construction, including operating

3    expenses, interest and other -- other expenses.

4           MR. BRASCOE:  And, plus, that's another -- whole

5    set of other loan documents that is subject to all sorts of

6    conditions and fees.  There is no way that that provides us

7    any security of the race if, in fact, we're the only remedy

8    in this case is the lien remedy.  And, that's why this is

9    just a serious things to be sitting with Your Honor.

10          The bond cost for them in the interim is not

11   extreme.  And, what they're asking for is extreme because it

12   would cause a right without a remedy.

13          THE COURT:  What -- what is your --

14          UNIDENTIFIED MALE:  We have no ability, I would

15   say, Your Honor, just so you understand, it would cause

16   irreparable harm to us.  We as a development company are not

17   a construction company.  We do not have a line for bonds.

18   Any bonds are required for us to fund, we have to fund one

19   hundred percent of the cost of that bond.  I don't mean the

20   premium, but the cost of the bond.  So, it's a --

21          THE COURT:  Why would you -- why would your lender

22   not be able to provide some sort of security, letter of

23   credit or otherwise, that'd be sufficient to guarantee them

24   if they prevail?

25          UNIDENTIFIED MALE:  The lender has sent us an

34

EXHIBIT 13

```
 1   e-mail, which they requested, that says, look, there's
 2   four million dollars remaining in the loan that has not been
 3   drawn yet.  Of that approximately 2.6 million dollars is to
 4   fund construction cost, which they are prepared to do as soon
 5   as the contractor submits the proper paperwork.  If the
 6   contractor --
 7            THE COURT:  2.6 is designated for that.  And, the
 8   amount of the lien is 2.3 or something like that?
 9            MR. BRASCOE:  Yeah.  But, Your Honor, there're
10   other cost --
11            UNIDENTIFIED MALE:  Yes.
12            MR. BRASCOE:  -- that are -- it says project, and
13   there's other -- other cost that are in that e-mail.
14            MR. DAVISON:  That's a above the 2.6.
15            MR. BRASCOE:  And, there's other --
16            MR. DAVISON:  And -- may I finish?  That's above
17   the 2.6 that is allocated for construction.  The e-mail that
18   I sent --
19            THE COURT:  The 2.6 -- yeah, you got a copy of
20   that?
21            MR. DAVISON:  Yeah.
22            MR. BRASCOE:  But, Your Honor, they got to put that
23   money in escrow or something.  And, they can't --
24            THE COURT:  Well, we're -- we're working on this
25   issue this second.
```

EXHIBIT 13

```
 1            MR. DAVISON:  The bank stated -- and, maybe you
 2   should say -- the e-mail that the bank said was that there is
 3   -- how much exactly --
 4            UNIDENTIFIED MALE:  There's, I think, 4.3 million
 5   dollars as -- of unfunded loan proceeds available in the loan
 6   today.
 7            THE COURT:  Um-hmm.
 8            UNIDENTIFIED MALE:  Of which 2.6 is designated for
 9   payment to the contractor.
10            THE COURT:  Okay.
11            MR. DAVISON:  And the rest is designated for --
12   but, I'm gonna cite to Your Honor the case of, Natural
13   Resources Defense Counsel versus Morton, and that's at 337
14   F.Supp 167, that's a 1971 case.  And, the Court here said
15   that under Rule 65(c), the Court is given wide discretion,
16   very wide discretion, in setting a bond.
17            And, if you set the bond so as to defeat the
18   Plaintiff's right under 14.6.1, not to have these liens, to
19   say, okay, well, you -- you essentially get the lien anyway
20   because the -- the Plaintiff has to put up a substantial
21   bond, their rights are defeated.  We don't have the money to
22   do that.
23            THE COURT:  Can I see the e-mail that you --
24            MR. DAVISON:  Yes.
25            THE COURT:  -- sent him with respect to what was in
```

EXHIBIT 13

```
 1    the bank from the lenders?
 2              UNIDENTIFIED MALE:  I would say, too, that the bank
 3    on this date, Your Honor, is extremely frustrated.  He has
 4    instructed us that he has no intention of coming down to
 5    review requisitions until the contractor complies with the
 6    contract.  In fact, his message to me was tell the contractor
 7    to read the contract.
 8              MR. BRASCOE:  Your Honor, if I --
 9              THE COURT:  You have a copy of the e-mails?
10              MR. BRASCOE:  Yes.  This is --
11              THE COURT:  Let me see --
12              MR. BRASCOE:  This is a copy of the e-mail.
13              THE COURT:  Let me take a look.  Everybody stop
14    talking for a minute so I can read it.
15              MR. DAVISON:  May I just see if that's the e-mail?
16              THE COURT:  Well, this is what I was handed.  Is
17    that --
18              MR. DAVISON:  Yes, Your Honor.  I'm sorry, sir.  We
19    can stop looking.
20              THE COURT:  Let me just see what it says.
21              MR. DAVISON:  Yes, Your Honor.  Thank you.
22              (Pause.)
23              THE COURT:  Is, ahh -- looking at the e-mail we
24    have an e-mail of December 3$^{rd}$, 4:22 p.m., from Sylvia
25    something.  Unpronounable last name.  That as of November
```

EXHIBIT 13

1   18th, there was 4.8., almost 4.9 million available to cover

2   remaining cost to complete.  Says, the remaining cost remain

3   available to fund construction, closeout cost, interest

4   reserve, operating expenses and GM fees.  And, then, above

5   there is a e-mail the next day from Mr. Davison to

6   Mr. Brascoe forwarding this and saying, it's important for

7   you to appreciate that 3 million dollars of these funds is

8   budgeted for hard construction cost.

9           And, is that -- is that means essentially Foulger-

10  Pratt's charges?

11          MR. DAVISON:  Yes.  Yes, Your Honor.  That's what

12  exactly --

13          MR. BRASCOE:  Your Honor, may I interject?

14          THE COURT:  Yeah.

15          MR. BRASCOE:  The requirements in the loan

16  documents, which were never given, were different than their

17  responsibilities under the construction contract.

18          Who knows what causes a breach under the loan

19  documents?  Nobody has ever -- we asked the whole time, and

20  we've offered whole harmless on these lien releases and

21  everything, put the money in escrow.  Put the money with a

22  receiver.  And, we will never avail ourselves to a lien

23  right.  That's not the way we wanted to go.

24          But, I am convinced from working with them, with

25  the meetings where the bank was hidden for obfuscation like

 1   that where it's impossible to tell -- they're not saying this

 2   money is in here that you can -- if you win you'd get it.

 3   They're saying it's available under some sort of loan

 4   document.

 5           I don't know what the requirements are.  I don't

 6   know what the different charges are, GM fees, interest

 7   conditions, how they have to get it, what bells and whistles

 8   that isn't a loan -- that moneys not there for me.  I can get

 9   a judgment against them; that doesn't say that I can go take

10   that to the bank and withdraw that money.

11           THE COURT:  Well, I agree with you, it's not --

12   it's not in a escrow account with all sorts of defined

13   conditions.  But, I -- we have a representation by the lender

14   that its available to cover the remaining cost to complete.

15   I think its implication there is that that is going to stay

16   available and we're not going to go spend it on a project in

17   the Virgin Islands or something.  They're committed to do

18   that.

19           And, the amount of the lien, again, is in the

20   papers somewhere, but what is it?  Two -- here it is, two six

21   three six four nine six?  Is that right?

22           MR. DAVISON:  Yes, Your Honor.

23           MR. BRASCOE:  Correct.

24           MR. DAVISON:  Six three -- two million six three

25   six four nine six.

EXHIBIT 13

```
 1              THE COURT:  Okay.

 2              MR. BRASCOE:  I think somewhere in their papers

 3    they said there's was only 2.3 available for construction.

 4              THE COURT:  Well, I haven't seen that, but this

 5    says there's 4.9 total.  And, 3.3 million for you, if you do

 6    all the right things, according to them.

 7              MR. BRASCOE:  Well, put that --

 8              MR. DAVISON:  Well, if I said that --

 9              MR. BRASCOE:  -- in escrow and it would be fair,

10    Your Honor.

11              MR. DAVISON: -- then I would say it be a mistake.

12              THE COURT:  I don't see any reason why as a

13    condition of getting the TRO the lender shouldn't agree to

14    simply hold that money until the preliminary injunction

15    hearing, and not otherwise disburse it.

16              MR. DAVISON:  We will agree to that.

17              THE COURT: Okay.

18              MR. DAVISON:  We will absolutely agree to that.

19              THE COURT:  Okay.

20              MR. DAVISON:  We will agree not to requisition the

21    3 million for -- for anything.  And, we will direct the

22    lender to hold it.

23              THE COURT:  Just hold it.

24              MR. DAVISON:  Just hold it.  We're not -- we --

25    Your Honor, we can't -- they've told us we can't get access -
```

EXHIBIT 13

```
 1   -

 2            UNIDENTIFIED MALE:  Actually, the lender will --

 3   has refused to fund --

 4            MR. DAVISON:  Anything.

 5            UNIDENTIFIED MALE:  -- until they do their

 6   obligations.  The lenders -- we're all happy to pay.  I'm

 7   happy to pay.  Just give us the paperwork.

 8            THE COURT:  Okay.  I think that provides an

 9   appropriate level of security between now and January 9th if

10   you want to raise with the Court seeking additional security,

11   an escrow account or bonds, whatever you can.

12            I'm conscious, in fact, I'm looking at exchanges of

13   e-mails that occurred three weeks ago.  And, nobody has done

14   anything until Christmas Eve when somebody comes rushing in

15   and -- and, I guess you filed yours how -- when was the

16   mechanic's lien filed?

17            MR. BRASCOE:  I believe Thursday, Your Honor.

18            MR. DAVISON:  Yeah.  We didn't --

19            THE COURT:  I mean, everyone's rushing around at

20   the last minute.  There was plenty of time to invoke the

21   dispute resolution process to try to work this out.  So,

22   there's a limited amount that can be done at this juncture.

23            I'm going to issue the TRO that I described, but a

24   condition of that is going to be that -- that the Plaintiff

25   not requisition on this amount, the 3 million part, and that
```

EXHIBIT 13

```
1    the -- that you get some sort of letter from the lender
2    agreeing to keep that amount available pending the ultimate
3    resolution of whatever their entitlement is.
4              UNIDENTIFIED MALE:  Your Honor, wouldn't the amount
5    that should be reserved for this purpose be equal to the
6    amount --
7              THE COURT:  Yeah.  It should be.
8              UNIDENTIFIED MALE:  -- outstanding on the contract?
9              THE COURT:  It should be --
10             UNIDENTIFIED MALE:  Which I believe is two point --
11             THE COURT:  -- the amount of the lien.
12             UNIDENTIFIED MALE:  It should be the amount of the
13   lien, not three million.
14             THE COURT:  No.  I agree.  It's a little less than
15   three million. Okay. Folks --
16             MR. BRASCOE:  Can you describe that letter, again,
17   Your Honor?  My notes are not quick enough.
18             THE COURT:  I'm going to put it in writing.  In a
19   few moments you'll get it.
20             Everybody have a seat out there and I'll give you
21   the order shortly.
22             Thank you.
23             MR. DAVISON:  Thank you very much, Your Honor.
24             MR. BRASCOE:  Thank you, Your Honor.
25             THE COURT:  You're welcome.
```

EXHIBIT 13

1            (Thereupon, the proceedings were concluded.)

2                 *    *    *    *    *    *    *

3               CERTIFICATE OF TRANSCRIBER

4

5        I, VALARIE E. WILLIAMS, an Official Court

6 Transcriber for the Superior Court of the District of

7 Columbia, do hereby certify that in my official capacity I

8 prepared from electronic recordings the proceedings had and

9 testimony adduced in the matter of; MADRIGAL CONDO, LLC, vs.

10 FOULGER-PRATT RESIDENTAL CONTRACTING, LLC, at al, Docket

11 Number: CA-8953-08, in said Court, on the 24th day of

12 December, 2008.

13        I further certify that the foregoing 42 pages were

14 transcribed to the best of my ability from said recordings.

15        In witness whereof, I have subscribed my name this

16 the 5th day of January, 2009.

17

18

19

20

21

22               OFFICIAL COURT TRANSCRIBER

23

24

25